## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KANSAS CITY SOUTHERN RAILWAY COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **NO:      05-1182 c/w 05-220, 05-4653** |
| **NICHOLS CONSTRUCTION COMPANY, L.L.C., ET. AL** | **SECTION: "C" (4)** |

## ORDER

Before the Court is the continued portion of a **Motion to Compel Interrogatories and Response to Request for Production of Documents (doc. #150)** filed by the plaintiff, Kansas City Southern Railway Company ("KCS"), seeking an order from this Court compelling a defendant, Turner Industries Group, L.L.C., to respond to discovery.  Turner filed an opposition memorandum.

**I.      Background**

On  November 30, 2004, Kansas City Southern Railway Company ("KCS") was operating its train through St. Charles Parish near St. Rose Louisiana when a truck and low-boy trailer owned by Nichols Construction Company and operated by Kenneth Bourg was stopped on the railroad crossing.  As the train approached, the Nichols truck did not move off the railroad tracks resulting in a collision between the Nichols truck and the KCS train.  Nichols Construction Company was later  reorganized into Turner Industries Group, L.L.C. ("Turner").

Between March 29, 2005, and November 1, 2005, KCS, a locomotive engineer named John Scott, and the conductor Larry E. Selvage all filed separate federal lawsuits against, among other defendants, Nichols Construction, Turner, and Bourg, resulting from the accident. These actions were eventually consolidated..

On July 28, 2005, Turner and its insurance company, St. Paul/Travelers Insurance Company, ("St. Paul") filed suit in the 29th Judicial District Court in St. Charles Parish seeking to recover damages arising out of the same accident. Named as defendants were KCS, the State of Louisiana through the Department of Transportation, the Parish of St. Charles, the St. Charles Parish Sheriff's Office and the St. Charles Communications District.

## II.     Standard of Review

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any matter, not privileged that is relevant to the claim or defense of any party." FED. R. CIV. P. 26(b)(1). The discovery rules are accorded a broad and liberal treatment to effect their purpose of adequately informing litigants in civil trials. *Hebert v Lando,* 441 U.S. 153, 176 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Further, "it is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v. American Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

The attorney-client privilege shields "communications made in confidence by a client to his lawyer for the purpose of obtaining legal advice. The privilege also protects communications from the lawyer to the client, at least if they would tend to disclose the client's confidential communications." *Hodges, Grant & Kaufmann v. U. S. Gov.*, 768 F.2d 719, 720-21 (5th Cir.1985).

The burden to establish the applicability of the attorney-client privilege rests on the party invoking the privilege and must be specifically asserted. *Id.* at 721; *U. S. v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir.1982). If, however, privilege exists, the information sought by a party can be withheld. *Baldrige v. Shapiro*, 455 U.S. 345 (1982). Applicability of the privilege "is a question of fact, to be determined in the light of the purpose of the privilege and guided by judicial precedents." *Hodges*, 768 F.2d at 721.

The work-product doctrine is "distinct from and broader than the attorney-client privilege." *United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975). Rule 26(b)(3) provides that:

> a party may obtain discovery of documents and tangible things . . . prepared in anticipation of litigation or for trial  . . . only upon a showing that the party seeking discovery has substantial need of the materials . . . .  In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney.

Thus, the work-product doctrine shields from discovery the materials prepared by or for an attorney in preparation of litigation. *Hickman v. Taylor,* 329 U.S. 495 (1947); *Blockbuster Entertainment Corp. v. McComb Video, Inc.,* 145 F.R.D. 402, 403 (M.D. La. 1992).

Initially, the Court must determine whether the documents were in fact prepared in anticipation of litigation; the mere fact that litigation eventually ensues does not, alone, protect all documents related to the subject matter of the litigation. *Binks Mfg. Co. v. National Presto Indus. Inc.*, 709 F.2d 1109 (7th Cir. 1983). The "test" for work-product protection is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Id.* at 1119. Additionally, a document is only considered work-product if it is primarily concerned with legal assistance. *Loctite Corp. v. Fel-Pro, Inc.*, 667 F.2d 577, 582 (7th Cir.1981).

III.    **Analysis**

During the March 21, 2007 hearing on this matter, KCS advised the Court that while Turner responded to the discovery with assertions of attorney-client privilege and work product protection, it did not provide a privilege log.  The Court then ordered that Turner produce a privilege log to KCS.  The Court continued the motion so that the parties could argue the motion with the benefit of the privilege log as well as to deal with whether a statement of Kenneth Bourg taken by a representative of Turner's insurer, St. Paul, was work product and/or protected by attorney-client privilege.

During the second hearing on this matter, the Court ruled on most of the privilege log, but continued the motion so that the Court could review certain of the documents found in the privilege log *in camera* to determine whether these documents were protected.  It also required that Turner provide another  supplemental memorandum to the Court detailing the identity of the individual that took the statement of Bourg and detailing the circumstances surrounding the preparation of the investigative report listed as Item 5 on the privilege log.  Turner provided the requested documents to the Court *in camera* and also filed a supplemental memorandum detailing the circumstances surrounding the production of the statement.  The Court deals with each of these in turn.

A.      **Documents from the Privilege Log**

1.      **Items 3 and 10 on the Privilege Log**

The first items for consideration are Items 3 and 10 on the privilege log.  According to the privilege log, these items are notes, some of which were taken during conversations with Turner's counsel or are apparently about conversations with Turner's counsel.  The Court reviewed these documents and concludes that Item Number 3 is not covered by the work product or attorney-client

privilege and must be produced.

The Court also reviewed Item 10 and concludes that the entry dated July 14, 2005 and the entry dated November 17, 2005 should be redacted.  The remaining portion of the claim notes must be produced as they are not protected.

### 2.       Items 7, 8, and 9

Items 7, 8, and 9 are all invoices from Turner's attorney.  These documents contain no information protected by the attorney client or work product privilege and must be produced.  *See Tonti Properties v. Sherwin-Williams Co.*, CIV.A.99-892, 2000 WL 506015 at *2 (E.D. La. April 27, 200) (noting that invoices "are not protected from discovery by the attorney-client privilege. . . [because] [t]he invoices themselves are merely a byproduct of the fact of the representation and are not protected by any of the asserted privileges [or the work product doctrine.]"  Accordingly, Items 7, 8, and 9 must be produced.

### 3.       Item Number 5

Item Number 5 is an investigative report prepared by the Barnett Group, an investigative company, and generated on January 4, 2005.  According to the privilege log, the report is based on site inspections conducted on December 8, 9, and 18, 2004, of the accident area.  The log further states that Galloway Basset was the addressee of the report.  Turner claims work product and attorney-client privilege.

During the hearing, KCS contended that there is no evidence that the report was prepared at the direction of counsel because counsel is not listed as the addressee of the report.  Thus, it contended that the document is not shielded from production.

Turner contends in its supplemental memorandum that although the addressee of the report

is the investigator from Galloway Bassett, the report was conducted at the direction of counsel for Turner, through communications from the primary investigator, Galloway Bassett.  It further contends that the scope of the investigation was set by its counsel and that counsel received the report within a week of its issuance.  Finally, it notes that the report itself states that the investigation was completed in anticipation of litigation and at the direction of counsel.

In this case, the Court notes that simply because a document states that it is privileged, does not, in fact, make it privileged.  Indeed, "[t]he parties resisting discovery by asserting any privilege bear the burden of proof sufficient to substantiate their privilege claims and cannot rely merely on a blanket assertion of privilege." *Coldwell Banker Real Estate Corp. v. Danette O'Neal*, CIV.A.06-2515, 2006 WL 3845011, at *1 (E.D. La. Dec. 29, 2006).

Here, Turner asserts generally that its counsel directed the investigation without providing this Court with any evidence to support that assertion.  Indeed, such assertion conflicts with the fact that Galloway Basset hired the Barnett Group and that Galloway Bassett was the intended recipient of the report.  The Court concludes that Turner has not met its burden of proving that the report is subject to protection.  Accordingly, Item 5 must be produced.

**B.    Statement Taken By St. Paul**

The Court  next turns to the statement of Kenneth Bourg taken by St. Paul.  Turner objected to producing the statement  based on the work product and attorney-client privilege.

KCS contends that witness statements are factual in nature and cannot be withheld based on the work product doctrine.  It further contends that St. Paul/Travelers does not represent Bourg and thus there can be no claim of attorney-client privilege.

During the April 13, 2007 Turner indicated that the statement was taken nine months after

the accident, and that it retained counsel on the day of the accident.  It did not know the identity of the individual that took the statement.  The Court then ordered that Turner file a supplemental memorandum detailing the name and position of the individual at St. Paul that took the statement and indicate who directed the St. Paul agent to take the statement.  In response, Turner filed  two affidavits of its counsel, Thomas Balhoff.

In the first affidavit, Balhoff states that St Paul's investigator, George Honses took the statement of Kenneth Bourg on June 10, 2007 after his firm was hired by St. Paul to pursue a claim filed in state court against KCS for a crane that was damaged in the accident.  Balhoff further states that St. Paul is not a party to this lawsuit.  He also states that neither Turner nor his law firm possesses the statement and thus this issue is moot.  The second affidavit was filed to correct a misstatement that St. Paul was not a liability insurer for Turner.  In fact, St. Paul was a liability insurer for Turner at the time of the accident, but allegedly not for the claims arising in this litigation.

The Court first notes that Turner provides no evidence in support of its earlier contention that the statement is privileged or work product.  There is no evidence that St. Paul took the statement at the direction of counsel or that it was not taken in the ordinary course of business.  *See e.g.* *Coldwell*, 2006 WL 3845011, at *1.  Without more, the Court rejects Turner's claim that the statement is subject to production.

The Court now turns to Turner's assertion that because neither Turner nor its law firm possesses the statement, it is under no obligation to produce the statement.  If the resisting party has the "practical ability to obtain the documents, then it is deemed to have 'control,' even if the documents are actually in the possession of a non-party" and the documents should be produced.  *In re Flag Telecom Holdings,*

*Ltd. Securities Lit.*, 236 F.R.D. 177, 180 (S.D. N.Y. 2006).  Further, the concept of control is "construed broadly."  *Id.*

The Court is not persuaded by this argument that was not raised at either of the two hearings or in their original submission.  Here, Turner's counsel represents Turner in the federal and state litigation as well as St. Paul in the state litigation.  Thus, counsel represents both parties in the state litigation.  Further, according to the second affidavit filed by Turner's counsel, Turner was insured by St. Paul at the time of the accident.  The Court concludes that although Turner may not apparently possess the statement, it does have the practical ability to obtain the documents and therefore has control of the document for the purpose of discovery.  Accordingly, the statement must be produced.   Accordingly,

**IT IS ORDERED THAT** the **Motion to Compel Interrogatories and Response to Request for Production of Documents (doc. #150)** is **GRANTED** to the extent that Turner will produce Items 3, 7, 8, and 9, as well as Item Number 10 redacted as indicated in this Order and the statement of Kenneth Bourg taken by St. Paul/Travelers no later than fifteen days from the signing of this Order.

New Orleans, Louisiana, this 20th day of June, 2007

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

8