UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| KANSAS CITY SOUTHERN RAILWAY COMPANY | CIVIL ACTION |
| VERSUS | NO. 05-1182 & consol. cases |
| NICHOLS CONSTRUCTION COMPANY, L.L.C., ET AL | SECTION "C" (4) |

**ORDER AND REASONS[1]**

Before the Court is a Motion for Summary Judgment filed by defendant, Prudential Insurance Company of America ("Prudential") (Rec. Doc. 234). Plaintiffs, Kansas City Southern Railway Company ("KCS"), John R. Scott ("Scott") and Larry Selvage ("Selvage" (collectively "Plaintiffs")), oppose the motion. The motion is before the Court on the briefs, without oral argument. Having considered the memoranda of counsel, the record and the applicable law, the Court finds that Prudential's motion is **GRANTED**.

I.   BACKGROUND

On November 30, 2004, a train and a tractor trailer collided at the Riverbend Boulevard railroad crossing in St. Charles Parish, Louisiana. KCS, the owner of the train, filed suit in

---

[1] Margot L. Kramer, a second year law student at Tulane University Law School, assisted in the research and preparation of this decision.

Federal Court on March 19, 2005. (Rec. Doc. 1). KCS then filed an amended complaint in which it added Prudential, the Parish of St. Charles ("the Parish"), the Parish of St. Charles Communications District ("the Communications District"), and Sheriff Greg Champagne (Sheriff Champagne") as defendants. (Rec. Doc. 16). Subsequently, the lawsuit was consolidated with actions concerning the same incident filed by Plaintiffs Scott and Selvage. (Rec. Doc. 27; Rec. Doc. 50). Scott and Selvage also amended their complaints to name Prudential, the Parish, the Communications District, and Sheriff Champagne as defendants to their actions. (Rec. Doc. 73; Rec. Doc. 104).

On February 23, 1981, Prudential entered into a Public Road Crossing Agreement ("Agreement") with KCS's predecessor, Louisiana & Arkansas Railway Company ("L&A"). (Rec. Doc. 234, Exh. 1; Rec. Doc. 234, Exh. 2). In the Agreement, L&A granted Prudential a servitude of passage across its right of way and track so that Prudential could construct a public roadway to serve the Riverbend Business Park. (Rec. Doc. 234, Exh. 2). Prudential agreed to "perform, or cause to be performed, al [sic] grading, drainage and finished road service made necessary by the installation of the above mentioned crossing, at Prudential's sole cost, risk and expense, and . . . thereafter maintain the grading, drainage and finished road surface at its sole cost, risk and expense." Id.  Prudential also agreed to "indemnify and hold L&A harmless from all claims, actions or demands made by third persons for property damage bodily injuries, death benefits or workmen's compensation benefits arising out of the maintenance and operation of the roadway in question and caused by the negligence of Prudential." Id. The parties further agreed that,

> [i]t is the intention of Prudential to timely dedicate the public road leading to and from the said crossing, as well as the servitude of crossing, to the public. Accordingly, notwithstanding anything herein to the contrary, in the event the roadway is so dedicated to the public and accepted for public maintenance, Prudential is relieved of any further responsibility under the terms of this Agreement.

Id.

According to Prudential's Motion, all parties agree that the Riverbend roadway surface was completed on or before May 15, 1984. (Rec. Doc. 234).[2] On that day, Prudential dedicated the roadway crossing to public use through an Act of Dedication ("Act") to the Parish. Id.[3] The Parish approved the execution of the Act with Ordinance No. 84-5-3. (Rec. Doc. 234, Exh. 5). In the Act, Prudential agreed to "assign, transfer, dedicate and convey unto St. Charles Parish all of its rights, title and interest in and to the Agreements with . . . Louisiana & Arkansas Railway Company." (Rec. Doc. 234, Exh. 3). The Act required that the Parish assume "full responsibility for the maintenance and operation of the railroad crossings and signals and compliance with the terms of the Agreements affecting said crossings." Id. The Act also stated that, "Prudential is herewith released from any further liability and responsibility under the terms of said Agreements." Id.

## II.   STANDARD OF REVIEW

The Federal Rules of Civil Procedure provide that summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

---

[2] There are no allegations that Prudential provided design, construction or maintenance to the railroad crossing after May 15, 1984.
[3] All plaintiffs and defendant Prudential recognize this Act of Dedication. (Rec. Doc. 234; Rec. Doc. 16; Rec. Doc. 73; Rec. Doc. 104).

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 247-48 (1986); see also, Taita Chem. Co. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001). When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." Reid v. State Farm Mut. Auto Ins. Co., 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 (1986). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial*." Matsushita Elec. Indus. Co. v. Senith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis supplied); Tubacex, Inc. v. M/V/ RISAN, 45 F.3d 951, 954 (5th Cir. 1995).

### III.   LAW AND ANALYSIS

Prudential filed this Motion for Summary Judgment arguing that it has no liability to KCS, Scott or Selvage because it was released from all liability for maintenance of the railroad crossing and indemnity to KCS by dedicating the railroad crossing to public use. (Rec. Doc.

234). Furthermore, Prudential argues that any action arising out of the design or construction of the railroad crossing is preempted by LA. REV. STAT. § 9:2772. Id.

In response, KCS argues that Prudential cannot be released from its obligation to it by an agreement with a third party under LA. CIV. CODE 1821 and that LA. REV. STAT. § 9:2772 does not apply to Prudential. (Rec. Doc. 249). Furthermore, in their response, Selvage and Scott argue that Prudential's Motion should be denied because there remains a genuine issue of material fact regarding the reasonableness of Prudential's design, construction and/or maintenance of the railroad crossing. (Rec. Doc. 254).

In Louisiana, "contracts have the effect of law for the parties." LA. CIV. CODE art. 1983 (West 2007). Under Louisiana law, the interpretation of a contract is an issue of law for the court to decide. Amoco Prod. Co. v. Texas Meridian Resources Exploration Inc., 180 F.3d 664, 668 (5th Cir. 1999) (citing, Texas Eastern Transmission Corp. v. Amerada Hess Corp., 145 F.3d 737, 741 (5th Cir. 1998). Upon determining that "the words of a contract are clear and explicit and lead to no absurd circumstances, no further interpretation may be made in search of the parties' intent." LA. CIV. CODE art. 2046 (West 2007).

Prudential asserts that the terms of the Agreement and Act are unambiguous and that pursuant to these agreements, Prudential bears no responsibility with respect to the accident. (Rec. Doc. 234). The Plaintiffs do not dispute the language in the Agreement and the Act, and a representative of KCS has agreed that there "is no ambiguity about the way it's written." (Rec. Doc. 234, Exh. 1). This Court agrees. The Agreement contemplated that Prudential would dedicate the roadway over the railroad to the public, and in doing so would be "relieved of any further responsibility under the terms of the Agreement." (Rec. Doc. 234, Exh. 2). In the Act, the

Parish assumed responsibility for the roadway, and agreed that Prudential was "released from any further liability and responsibility under the terms of said Agreements." (Rec. Doc. 234, Exh. 3). As a result, Prudential was relieved of liability for maintenance of the roadway and indemnity to KCS, while the Parish assumed responsibility for maintenance according to the terms of the original Agreement.

As mentioned above, KCS relies on LA. CIV. CODE art. 1821 in claiming that Prudential owes it indemnity. KCS is correct that LA. CIV. CODE art. 1821 states that: "An obligor and a third person may agree to an assumption by the latter of an obligation of the former. . . The obligee's consent to the agreement does not effect a release of the obligor." KCS's reliance upon that statute in this case is misplaced because the assumption of an obligation by a third person can effect a novation if "the obligee *clearly expresses his intention to regard the original obligation as extinguished* and accept in lieu thereof a new obligation of the third person." Saul Litvinoff, La. Civil Law Treatise § 10:13 (2d ed. 2006-2007) (emphasis added); see Latiolais v. Citizens Bank of Louisiana, 33 La. Ann. 1444 (La. 1881) (holding that "the intention [to novate] must clearly result from the terms of the agreement"), overruled on other grounds, General Motors Acceptance Corp. v. Anzelmo, 222 La. 1019 (La. 1953). The terms of the original Agreement between KCS and Prudential are clear. Upon dedication to the public, Prudential was relieved of all responsibility for maintenance of the roadway and of all responsibility to indemnify KCS.

Prudential also argues that any liability arising out of the design, construction or maintenance was preempted five years after construction by LA. REV. STAT. § 9:2772. (Rec.

Doc. 234). In response, KCS asserts that this statute cannot apply to Prudential because Prudential is not a contractor or surveyor. (Rec. Doc. 249). As Prudential points out, LA. REV. STAT. § 9:2772 states that:

> [n]o action whether ex contractu, ex delicto, or otherwise . . . arising out of an engagement of planning, construction, design or building immovable or movable property . . . shall be brought against any person performing or furnishing the design, planning, supervision inspection or observation of construction . . . or improvement to immovable property, including but not limited to a residential building contractor . . . (1)(a) more than five years after the date of registry in the mortgage office of acceptance of work by the owner. (b) If no such acceptance is recorded within six months from the date the owner has occupied or taken possession of the improvement in whole or in part, more than five years after the improvement has been thus occupied by the owner.

This statute is indeed applicable to Prudential. The statute does not require the action be against a contractor, but rather that the action be against "any person performing or furnishing design, planning, supervision, inspection or observation of construction . . . not limited to a residential building contractor." Id. KCS's earlier arguments are predicated on Prudential's performance of "design, construction and maintenance of the roadway." (Rec. Doc. 249). The language of the Agreement confirms that Prudential took on the role of the person contemplated by the statute: "Prudential agrees to perform, or cause to be performed, al [sic] grading, drainage and finished road surface made necessary by installation of the above mentioned crossing, at Prudential's sole cost, risk and expense." (Rec. Doc. 234, Exh. 2).

In Herbert v. Rapides Parish Police Jury, the court applied LA. REV. STAT. § 9:2772 and held an action perempted after finding that a bridge was "an improvement to immovable property as contemplated by the statute" Herbert, 02-62, p. 4 (La. App. 3. Cir. 6/5/02); 819 So. 2d 470, 472. The court reasoned that the ownership of the road and bridge relative to the

ownership of the land were irrelevant, and that it was unnecessary to determine whether the bridge was an immovable or a component part to determine that the bridge was an "improvement to an immovable." Id. at p. 4; 472.

Similarly, the railroad crossing at issue in this case is an improvement to an immovable, and as such it is governed by LA. REV. STAT. § 9:2772. Prudential, having agreed to perform the construction, or cause it to be performed, is a party contemplated by the statute. The parties agree that Prudential no longer had involvement with design, construction or maintenance after May 15, 1984. Thus, since more than five years have passed, any action arising out of Prudential's involvement with design, construction or maintenance of Riverbend Boulevard railroad crossing is perempted.[4]

### III.  CONCLUSION

For the reasons stated above,

IT IS ORDERED that the defendant's Motion for Summary Judgment is **GRANTED**.

New Orleans, Louisiana this 6th day of August, 2007.

_____
HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE

---

[4] Since this court finds any claim against Prudential relating to its design or construction of the Riverbend Blvd. railroad crossing perempted, it is unnecessary to discuss Scott and Selvage's argument that Prudential has not presented evidence as to the reasonableness of its design, construction and/or maintenance.