**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **KANSAS CITY SOUTHERN**<br>**RAILWAY COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 05-1182 c/w 05-5220,**<br>**05-4653** |
| **NICHOLS CONSTRUCTION**<br>**COMPANY, LLC, ET AL.** | **SECTION "C" (4)** |

**<u>ORDER AND REASONS</u>**[1]

      Before the Court is a Motion for Summary Judgment filed by defendant Sheriff Greg

Champagne ("Sheriff Champagne") (Rec. Doc. 182).  Sheriff Champagne moves for summary

judgment on behalf of himself and co-defendant, the St. Charles Parish Sheriff's Office

("Sheriff's Office").  Plaintiffs, John R. Scott ("Scott") and Larry Selvage ("Selvage")

(collectively, "Plaintiffs") oppose the motion.   The motion is before the Court on the briefs,

without oral argument.  Having considered the memoranda of counsel, the record, and applicable

law, the Court finds that Sheriff Champagne's Motion for Summary Judgment is **GRANTED**.

---

     [1] Annise K. Maguire, a second year student at Tulane Law School, assisted in the
research and preparation of this decision.

I. BACKGROUND

On November 30, 2004, a train operated by Kansas City Southern Railway Company ("KCS") was passing through St. Charles Parish, Louisiana near St. Rose.  A truck and low-boy trailer owned by Nichols Construction Company ("Nichols") and operated by Kenneth Bourg ("Bourg") became stuck on the railroad tracks at Riverbend Road in St. Rose, resulting in a collision between the Nichols truck and the KCS train.[2]  On March 29, 2005, KCS sued Turner and Bourg in this Court, alleging that they were liable for the extensive property damage that resulted from the collision.  *Kansas City S. Ry. Co. v. Nichols Constr. Co., et al.*, Civil Action No. 05-1182.  Scott, the locomotive engineer, and Selvage, the conductor, subsequently filed their own suits against Nichols, Turner, Bourg and other defendants.  *Scott v. Nichols Constr. Corp., et al.*, Civil Action No. 05-5220; *Selvage v. Nichols Constr. Corp., et al.*, Civil Action No. 05-4653.  Also, Turner and its insurance company, St. Paul/Travelers Insurance Company ("St. Paul") filed suit in the 29th Judicial District Court for the Parish of St. Charles, State of Louisiana, seeking to recover damages arising out of the same accident.  In their state court action, Turner and St. Paul named KCS, the State of Louisiana through the Department of Transportation, the Parish of St. Charles ("Parish"), the Sheriff's Office and the St. Charles Communications District as defendants.[3]  Subsequently, KCS, Scott and Selvage filed amended complaints in their separate federal court actions that named Sheriff Champagne as an additional

---

[2]     Nichols was later reorganized into Turner Industries Group, LLC ("Turner").

[3]     This Court has not been provided with information regarding the current status of the state court lawsuit.

defendant.  Rec. Docs. 16, 73 & 96.[4]

KCS, Scott and Selvage allege that immediately after the Nichols truck stopped on the railroad tracks a passing motorist, Richard Kessler ("Kessler"), called 911 and informed a deputy at the Parish 911 Call Center ("Call Center") of the situation.  Rec. Doc. 16.  KCS, Scott and Selvage argue that the Sheriff's Office failed to notify the appropriate people, causing and/or contributing to the accident and losses that they incurred.  Rec. Docs. 16, 73 & 96.  KCS, Scott and Selvage contend that Sheriff Champagne is liable for damages because the Sheriff's Office: (1) failed to adequately respond to a 911 call; (2) failed to notify the proper railroad representatives; (3) failed to convey accurate information to railroad authorities; (4) failed to notify other authorities of the vehicle stopped on the railroad tracks; and, (5) generally failed to warn.  They also argue that Sheriff Champagne should have had a policy, procedure or training that addressed situations where a vehicle or other object is blocking a railroad track.

Sheriff Champagne filed this Motion for Summary Judgment asserting that there are no genuine issues of material fact.  He claims that his deputies' responses to the 911 call were proper for an emergency situation and that there is no evidence of willful or wanton misconduct or gross negligence.  As a result, Sheriff Champagne claims that he is not liable for Plaintiffs' alleged damages and that Plaintiffs failed to prove their prima-facie case.

---

[4]     Each of the lawsuits filed in federal court  were consolidated into the above captioned action by this Court on February 17, 2006.  *See* Rec. Docs. 27 & 50.

3

## II.  STANDARD OF REVIEW

Summary judgment is only proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56.  A genuine issue of fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *see also Taita Chem. Co. v. Westlake Styrene Corp.,* 246 F.3d 377, 385 (5th Cir. 2001).  When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion."  *Reid v. State Farm Mut. Auto Ins. Co.,* 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Once the moving party has met its initial burden, however, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."  *Engstrom v. First Nat'l Bank of Eagle Lake,* 47 F.3d 1459, 1462 (5th Cir. 1995).  In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations."  *See Hopper v. Frank,* 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l. Wildlife Fed'n.,* 497 U.S. 871, 871-73 (1990); *Donaghey v. Ocean Drilling & Exploration Co.,* 974 F.2d 646, 649 (5th Cir. 1992).

4

### III. ANALYSIS

Under Louisiana law, some degree of immunity is provided to sheriffs and their employees concerning the operation and performance of emergency services. No sheriff, nor any employee thereof, is liable for civil damages "resulting from, arising out of, or due to any act or omission in the development . . . performance, or provision of 911 services, *except when said damages are a result of willful or wanton misconduct or gross negligence on their respective part*." LA. REV. STAT. ANN. § 33:9108 (emphasis added).

Sheriff Champagne argues that there are no disputed issues of material fact regarding Plaintiffs' claims against him and the Sheriff's Office. First, he asserts that Plaintiffs failed to demonstrate and/or allege that he, or any of the deputies employed at the Call Center, acted with willful or wanton misconduct or gross negligence in responding to the 911 call. Next, he claims that the affidavit of Deputy Cardella and the telephone records of the 911 call illustrate that there was insufficient time for the Sheriff's Office to prevent or diminish the scope of the collision. Finally, Sheriff Champagne contends that the Call Center operators followed the proper emergency response for a call concerning a potential danger on a railroad track.

In order for Plaintiffs to recover against Sheriff Champagne they must show that the Call Center's response to the 911 call provides evidence of willful or wanton misconduct or gross negligence on the part of the Sheriff or a deputy. Plaintiffs fail to specifically allege in either their Original or Amended Complaints that Sheriff Champagne or any employee of the Call Center acted with willful or wanton misconduct, or with gross negligence. *See* Rec. Doc. 216. Rather, Plaintiffs contend that summary judgment is inappropriate because there are disputed

5

issues of material fact as to whether the operator in the Call Center could have diminished the scope of the collision if the Sheriff's Office had in place proper training and procedures for instances when an object is stopped on the railroad tracks.  *Id*.

In support of their argument, Plaintiffs refer to Deputy Cardella's testimony that he was uncertain whether the Sheriff's Office had a specific policy concerning railroad-crossing accidents or any policy, procedure or training for Call Center operators when confronted with the issue of a blocked railroad crossing.  Rec. Doc. 216.  Plaintiffs also cite Deputy Cardella's testimony that he did not know whether the Call Center had any documentation as to which railway lines operated at which crossings.  *Id*.  Finally, Plaintiffs rely on the transcript of the 911 calls as evidence of the Call Center's failure to establish contact with the correct railroad company between the time of the 911 call and the collision.  *Id*.

Deputy Cardella's affidavit and corporate deposition provide a time line of events surrounding the collision.[5]  Rec. Doc. 208.  At 8:49:09 a.m. Kessler reported to the Call Center that an eighteen-wheeler was stuck on the railroad tracks at Riverbend Road.  *Id*.  At 8:50:47 a.m. the Call Center alerted patrol units of the truck stopped on the railroad tracks.  The Call Center was notified by a police unit at 8:51:10 a.m. that a train was heading towards Riverbend Road.  Rec. Doc. 182-2.  At this point, the train was approximately four miles from the crossing at Riverbend Road.  *Id*.  Deputy Cardella testified that at least four railroad lines pass through St. Charles Parish, with two crossing Riverbend Road, and that the Sheriff's Office has emergency

---

[5]      Deputy Cardella's time line is based on information recorded by the CAD system, which provides an automatic time stamp when a 911 operator makes an entry in the Comments section. Deputy Cardella stated that he knows of no way that the recording can be changed, modified or redacted.

6

contact information for all railroad lines.  Rec. Doc. 208.  Kessler did not identify to the Call

Center operator on which set of tracks the truck was stuck on.  Rec. Doc. 182-2.  The operator

promptly contacted Canadian National, one of the two companies operating trains on the railway

lines at Riverbend Road.  *Id*.  The call to Canadian National was made at 8:51:51 a.m.- only

forty seconds after the responding unit notified the Call Center that a train was moving toward

the Riverbend Road crossing.  *Id*.  A Canadian National representative informed the operator that

none of its trains were in the area, and recommended that the operator contact KCS.  *Id*.  The

operator's call to Canadian National concluded at 8:53:00 a.m.  *Id*.  The collision between the

KCS train and the Nichols truck occurred at 8:52:30 a.m.  *Id*.

     The operator at the Call Center responded immediately in an effort to notify the proper

authorities of the situation.  Within one minute and thirty seconds of receiving the 911 call that

notified the Sheriff's Office that a truck was stuck on the train tracks, the operator had alerted all

police units.  Within two minutes and forty-two seconds of receiving the notice the operator had

contacted one of the two railroad companies operating a line that crossed at Riverbend Road, in

an effort to warn them of the danger.  However, less than forty seconds after the operator

contacted the railroad company the KCS train collided with the Nichols truck.  Thus, even if the

operator at the Call Center had been informed on which track the Nichols truck was stuck, and

had correctly called KCS instead of Canadian National, KCS would not have had time to do

anything to prevent or diminish the collision.

     As shown above, there was insufficient time for the Sheriff's Office to prevent the

accident, even if the Call Center had contacted KCS prior to the collision.  Thus, the alleged lack

of a policy, procedure or training for Call Center operators confronted with the issue of a blocked railroad crossing is immaterial.  Further, Plaintiffs claim only that the Sheriff's Office responded negligently to the 911 call.  Under Louisiana law, in order to successfully bring an action for civil damages against a sheriff for conduct related to emergency services, a plaintiff must demonstrate that the alleged damages are the result of willful or wanton misconduct or gross negligence on the part of the sheriff.  Here, Plaintiffs failed to provide any evidence that the actions of Sheriff Champagne or any employees of the Call Center satisfy this standard.

## IV.  CONCLUSION

For the reasons stated above,

IT IS ORDERED that the Plaintiffs' Motion for Summary Judgment as to the claims against the St. Charles Parish Sheriff's Office is **GRANTED**.

New Orleans, Louisiana this 6th day of August, 2007.

_____
HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE