UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KANSAS CITY SOUTHERN RAILWAY COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 05-1182 c/w 05-5220, 05-4653** |
| **NICHOLS CONSTRUCTION COMPANY, L.L.C., ET AL** | **SECTION "C" (4)** |

## ORDER AND REASONS

This matter comes before the Court on a Motion to Appeal the June 20, 2007 findings and recommendations of the Magistrate Judge pursuant to 28 U.S.C. § 636, filed by Turner Industries Group, L.L.C. ("Turner") (Rec. Doc. 215). The plaintiff, Kansas City Southern Railway Company ("KCS") opposes the motion. Having considered the record, the memoranda of counsel and the applicable law, the Court has determined that the appeal should be **PARTIALLY GRANTED AND PARTIALLY DENIED.**

**I.     BACKGROUND**

On November 30, 2004, a train owned and operated by KCS and a semi-truck and trailer owned by Turner and operated by Kenneth Bourg ("Bourg") collided. Rec. Doc. 4, p. 3. Turner alleges that the accident led to significant damage to the trailer and destroyed a crane that was on it. Rec. Doc. 7, Exh. B, ¶ 8. KCS alleges that the impact derailed the train and caused property damage "well in excess of . . . $75,000" to KCS. Rec. Doc. 1, p.3.

On the day of the accident, counsel for KCS was present at the scene. Rec. Doc. 151, p. 2. Turner contacted Gallagher Basset Services, Inc. ("GB") to report the accident and advise GB of an expected property damage claim or suit by KCS. Rec. Doc. 158, B, p.3.[1] By the end of the day, Turner had contacted and discussed the accident with the attorney Thomas E. Balhoff ("Balhoff"). Rec. Doc. 169, p. 2 ¶ 3. On the following day, Turner and Balhoff further discussed the accident and Balhoff's law firm was retained as counsel for Turner. *Id.*

---

[1]     GB is a full service insurance claims service company that has provided claims management services to Turner since March, 2003. (Rec. Doc. 158, B, p. 3).

2

KCS filed suit in Federal Court on March 19, 2005. On February 14, 2007 KCS filed a Motion to Compel Interrogatories and Response to Request for Production of Documents. Rec. Doc. 150. Because Turner had not yet done so, the Magistrate ordered Turner to generate a privilege log regarding several documents it had withheld on the basis of privilege. Rec. Doc. 170, p. 3. Then on April 13, 2007, the Magistrate ruled on most of the privilege log, but continued the remainder of KCS's Motion to Compel so that the Court could review certain documents found in the privilege log *in camera* to determine whether they were protected.[2] *Id.* At the same time, the Magistrate ordered Turner to provide another supplemental memorandum regarding the identity of the individual who took Bourg's statement and the circumstances surrounding the preparation of the investigative report listed as Item Number 5 on the privilege log. *Id.* After reviewing the documents and Turner's supplemental memorandum, the Magistrate ordered the production of the documents. Rec. Doc. 200.

This appeal concerns six items of discovery, five of which are listed on the privilege log. Item Number 5 is an investigative report prepared by the Barnette Group ("Barnett"), an investigative company, for GB on January 4, 2005. Rec. Doc. 200. Item

---

[2] This Court overturned the Magistrates April 13, 2007 ruling after Turner filed a Motion to Appeal. Rec. Doc. 238.

Number10 includes handwritten notes of GB's representatives, some of which were taken during conversations with Turner's counsel or about conversations with Turner's counsel. *Id.* Items Number 7, 8, and 9 are invoices from Tuner's attorney. *Id.* The other document sought is a statement of Bourg taken by St. Paul/Traveler's Insurance Company ("St. Paul"). *Id.*

The Magistrate Judge held that these documents were not protected by the work-product doctrine and/or attorney-client privilege. *Id.* Thus, the Magistrate Judge granted KCS's Motion to Compel Interrogatories and Response to Request for Production of Documents regarding Items Number 5, 7, 8, 9 and 10 and Bourg's statement to St. Paul. *Id.*

Turner argues that Items Number 5, 7, 8, 9 and 10 are protected by the attorney-client privilege or the work product doctrine because the primary motivating purpose behind the creation of these documents was to aid in future litigation. Rec. Doc. 215. Also, Turner asserts that it does not have possession of or access to Bourg's statement to St. Paul. *Id.* KCS argues that the documents were prepared in the ordinary course of business or are not subject to attorney client privilege. Rec. Doc. 262. KCS also contends that Turner should be able to obtain Bourg's statement to St. Paul because he represents both of them in the parallel state court litigation and because Bourg has a right to obtain

a copy of his statement. *Id.* KCS further asserts that the Magistrate's ruling was correct because the documents "were prepared by representatives of Turner or its routine outside investigative service, not counsel." *Id.*

II.   LAW AND ANALYSIS

The Magistrate Judge's ruling is before this Court on appeal. Pursuant to 28 U.S.C § 636(b)(1)(A), this Court "may reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is *clearly erroneous or contrary to law.*" (emphasis added).

### Items Number 5, 7, 8, 9 and 10

The work-product doctrine is governed by FED. R. CIV. P. 26(b)(3) (West 2007), which provides in relevant part:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable . . . and prepared *in anticipation of litigation* or for trial by or for another party or by or for that *other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)* only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of the party concerning the litigation.

5

(emphasis added). This Court's reads this rule to protect a document or tangible thing from discovery when it was prepared *by or for that party or that party's representative* and was prepared *in anticipation of litigation*. If these tests are satisfied, the party seeking discovery must prove that it has a substantial need of the material and that it is unable to obtain equivalent materials without undue hardship. The jurisprudence supports this reading.

A.      **Prepared By or For the Party or the Party's Representative**

Before its codification in FED. R. CIV. P. 26(b)(3), the work product doctrine was recognized by the Supreme Court in *Hickman v. Taylor*, 329 U.S. 495 (1947). The Court in *Hickman* found that in order to "promote justice and protect their clients' interests" a lawyer must be able to assemble and sift through information and plan her strategy "free from unnecessary intrusion by opposing parties and their counsel." *Id.* at 510-511. As the modern rule suggests, however, the work product doctrine is no longer limited to documents prepared by an attorney. The 1970 amendment to the rule "expressly extends protection to documents prepared by or for a representative of a party, including his agent." 8 Charles Wright, Arthur Miller & Richard Marcus, *Federal Practice & Procedure* § 2024 (2d Ed. 1994).  "Thus, the rule made it clear that a report from the insured to the insurer is within the immunity as are statements obtained by

investigators for the insurer." *Id.* In general, investigative reports prepared by agents of the party or the party's attorney are protected by the work product doctrine. 6 James Wm. Moore, *Moore's Federal Practice* § 26.70[4] (3rd Ed. 2007). Thus, the first prong of the work-product protection is satisfied if the document or tangible thing was prepared by or for the party or *by or for the party's representative*.

The Magistrate Judge concluded that Items Number 7, 8, 9 and 10 were not the protected by attorney client or work product privileges and must be produced, with little explanation. Rec. Doc. 200. She also concluded that Item Number 5 was not protected by the work product privilege because there was no evidence that it was produced at the direction of Turner's counsel. *Id.*

Items Number 5 and 10 were prepared by the investigators, GB or Barnett, not Turner's attorneys. However, this fact is not determinative. *Id.* Although the work product doctrine originated with the theory that an attorney's thoughts must be protected, the doctrine now protects documents created by or for Turner or by or for Turner's representative. Item No. 5 was prepared by Barnett for GB. Rec. Doc. 200. GB is a consultant or agent of Turner. Rec. Doc. 238. Item Number 10 was prepared by GB and concerns conversations with Turner's attorney. Rec. Doc. 170. Thus, it was prepared by Turner's representative. Also, Items Number 7, 8, and 9 are all invoices

7

from Turner's attorney to GB, so these documents were prepared by Turner's attorney for its representative. Rec. Doc. 200. All five documents were prepared by or for Turner or by or for representatives of Turner.

**B.     Prepared in Anticipation of Litigation**

The second prong of the work-product doctrine requires that the document was prepared in anticipation of litigation. FED. R. CIV. P. 26(b)(3). In the Fifth Circuit, litigation need not be imminent, but the primary motivating purpose behind the creation of the document should be to aid in possible future litigation. *In re Kaiser Lauminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000). Documents prepared in the ordinary course of business, however, are not protected from discovery by the work-product doctrine. *U.S. v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982) (holding that tax pool analysis was prepared with an eye on business needs, not litigation needs, and thus not protected from discovery).

In the realm of insurance claims and litigation, the analysis of whether documents were prepared in anticipation of litigation becomes more complicated. This is primarily because insurance companies are in the business of conducting, investigating and evaluating claims against its policies. *Piatkowski v. Abdon Callais Offshore, L.L.C.*, 2000 WL 1145825, at *2 (E.D. La. 2000). When it comes to insurance

8

claims adjuster's files, "[t]he overwhelming majority of federal courts that have addressed the issue . . . have maintained the fact specific approach," which requires an inquiry into "whether a given item of discovery was produced in anticipation of litigation." *S.D. Warren Co. v. Eastern Elec. Co.*, 201 F.R.D. 280, 283 (D. Me. 2001). To show that a document was prepared in anticipation of litigation, courts have required that the insurer point to a "critical factor that made it anticipate litigation . . . and offer specific facts demonstrating that the critical factor did indeed make the insurer deal with the insured in a different way." *Stout v. Illinois Farmers Ins., Co.*, 852 F.Supp. 704, 706 (S.D. Ind. 1994). *See also Dunn v. State Farm Fire & Cas. Co.*,122 F.R.D. 507 (N.D. Miss. 1988) (holding that although the insurer regularly retained attorneys to evaluate whether to deny a claim, the work product doctrine applied to documents prepared by or for attorneys because in the Dunn case the insurer retained its attorneys after learning that the Dunns had signed a confession admitting to having intentionally started the fire that caused the loss).

  Since the documents in this case involve Turner's insurance claims service provider, KCS cites two cases for the proposition that an insurer's investigative files are created in the ordinary course of business, and thus not protected by the work product doctrine. KCS first discusses *St. James Stevedoring Co., Inc. v. Femco Machine Co.*, 173

9

F.R.D. 431, (E.D. La. 1997), which involved a seller of a crane damaged in an accident demanding production of documents by the purchaser and an insurer of the crane. *Id.* The court found that the insurer could not have reasonably anticipated litigation until it received a report about the cause of the accident. *Id.* at 434. Using this date as a guide, the court held any documents produced before the date were not privileged and any documents produced after it discoverable. *Id.* at 435. Although KCS focuses on the timing of document production in its analysis of the case, the court in *St. James* did not consider timing in relation to the accident, but rather in relation to when litigation could reasonably anticipated. *Id.* Indeed, the court in *Piatrowski v. Abdon Callais Offshore, L.L.C.* observed that rather than timing of production, the primary motivating purpose behind the creation of the document is pivotal in determining whether the work product protection applies. *Piatrowksi*, 2000 WL 1145825, at *2 (E.D. La. 2000).

KCS also cites *Nissho Iwai Co. v. M/V Sea*, 1999 WL 350090 (E.D. La. 1999) in support of its position that the documents in question were prepared in the ordinary course of business. The court in *Nissho* considered whether the work-product doctrine applied to survey reports compiled by surveyors summoned to a vessel after a claim for damages was reported to the insurer. *Nissho*, 1999 WL 350090, at * 1. The court stated that "so long as the surveyors are acting at the request of liability insurers, *in a case*

*where attorneys for the assured have not yet been appointed*, and the surveyors do not report directly to counsel, the surveys are not regarded as 'prepared in anticipation of litigation,' even though an eventual suit by the cargo owner or its insurer is well within the bounds of reasonable possibility." *Id. quoting Insurance Co. of North America v. M/V Savannah*, 1995 WL 608295, (S.D.N.Y. 1995) (emphasis added). Noting that surveyors are regularly present at the discharge of cargo even where there are no allegations of damage, the court held that the survey reports were not protected by the work product doctrine. *Id.* Unlike the current case, apparently attorneys were not yet involved when the surveys were prepared. *Id.* The court considered a similar case in *Piatrowski*, where the court did not protect from discovery witness statements obtained by the insurer's claims adjuster because such investigations were routinely conducted. *Id.* at *3. In coming to its decision, the court noted that insurer had not provided the date when counsel was formally retained. *Id.* Without evidence to indicate that the investigation was conducted in anticipation of litigation and not as a normal claim evaluation, the court held that the work product doctrine did not apply. *Id.*

    A survey of cases reveals that the severity of an accident may make anticipation of litigation reasonable. Documents created by the insurer or its representative tend not to be protected by the work product doctrine if they were prepared as a "more or less

11

routine investigation of a possibly resistible claim." *Tejada Fashions Corp. v. Yasuda Fire and Marine Ins. Co. (U.K.), Ltd.*, 1984 WL 500, at * 3 (S.D.N.Y. 1984). Investigative files will be protected, however, when prepared in response to an accident so serious that a lawsuit will inevitably be filed. *See Holton v. S&W Marine, Inc.*, 2000 WL 1693667, at *3 (E.D. La. 2000) (holding that a statement taken from a witness by insurance claims adjuster was routine and not protected by work product doctrine because the claim involved a non-life-threatening injury on a barge, "a fact of life for vessel owners and their crew members," and differentiating from *Hamilton v. Canal Barge Co., Inc.*, 395 F.Supp. 975 (E.D. La. 1974) (where a serious accident caused the plaintiff fatal injuries)).

Turner argues that Items Number 5, 7, 8, 9 and 10 were prepared in anticipation of litigation. The record shows that counsel for KCS was involved on the day of the accident and that Turner had contacted counsel on that same day. Rec. Doc. 151, p. 2; Rec. Doc. 158, Exh. B, p.3. In both *Piatrowski* and *Nissho*, the courts refused to protect investigative files, and in doing so considered that the insurers had not shown that they had already retained counsel at the time the documents were produced. *Piatrowski*, 2000 WL 1145825 at *3; *Nissho*, 1999 WL 350090 at *1. Unlike these cases, Turner and KCS both had attorneys involved on the day of the accident, suggesting that both sides anticipated litigation.

Although Turner had regularly used GB for claims adjustment, Turner argues that because of the severity of the accident, communications with GB were made in anticipation of litigation from the day of the accident. In *Holton*, the court did not extend the work product doctrine to investigative files produced after what it considered to be a normal accident as opposed to a severe accident. *Holton*, 2000 WL 1693667 at *3. The record shows that both parties suffered significant damages. Rec. Doc. 7, Exh. B, ¶ 8; Rec. Doc. 1, p.3. This Court finds that it was reasonable for Turner to anticipate litigation from November 30, 2004, the day of the accident.

Item Number 5 is a report prepared by Barnett for GB on January 4, 2005. Item Number 10, consists of notes in GB's claims file concerning this incident and are dated from December 3, 2004 to November 17, 2005. Since litigation was reasonably anticipated as of the day of the accident, both of these documents were prepared in anticipation of litigation and were protected by the work product doctrine. Items Number 7, 8 and 9 are invoices with transmittal letter from Turner's attorney to GB. Since GB is a representative of Turner, and the communications were made regarding the accident after litigation was anticipated, the document is protected by the work product doctrine. These invoice for services provided in anticipation of litigation by a representative of Turner are protected by the work-product doctrine.

All five documents, Items Number 5, 7, 8, 9 and 10, were prepared by or for Turner or its representatives and were prepared in anticipation of litigation. The work product doctrine protects these documents from discovery. Therefore, this Court finds that the Magistrate Judge's ruling that the work product protection did not apply because the documents were not prepared by an attorney is clearly erroneous and contrary to law.

C.   **Necessity and Undue Hardship**

If a party shows the documents were prepared in anticipation of litigation, the party seeking discovery must show that it has "substantial need of the materials . . . and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." FED. R. CIV. P. 26(b)(3). KCS makes no showing that it has substantial need for Items Number 5, 7, 8, 9 and 10 or that the information is unobtainable by other means.

**Bourg's Statement to St. Paul**

The Magistrate Judge found that this statement was not subject to the work product or attorney client privilege.  She also found that although neither Turner, nor its attorneys have the statement, they do have "the practical ability to obtain the documents," and are thus "deemed to have 'control'" over them.  Rec. Doc. 200; *citing In*

14

*re Flag Telecom Holdings, Lt. Securities Lit.*, 236 F.R.D. 177, 180 (S.D.N.Y 2006). This finding was based on the fact that Turner's counsel represents both Turner and St. Paul in the parallel state litigation and that Turner was insured by St. Paul at the time of the accident.

Turner argues that this ruling was incorrect because it should not have to obtain documents from one of its clients to produce documents that have been requested from another. However, Turner overlooks the fact that its attorneys also represent Bourg, the party to this litigation that made the statement. Bourg has an absolute right to obtain a copy of his statement in the state court proceedings, which can then be produced to KCS. *See* LA. CODE CIV. PRO. art. 1424(B). As a result, the Court cannot say that the Magistrate Judge's ruling is "clearly erroneous or contrary to law." *See* 28 U.S.C. § 636(b)(1)(A).

### III. CONCLUSION

For the reasons stated above,

IT IS ORDERED that the Motion to Appeal the June 20, 2007 findings and recommendations of the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A), filed by Turner Industries Group, L.L.C. is **PARTIALLY GRANTED AND PARTIALLY**

15

**DENIED**. The Magistrate Judge's ruling as to Items Number 5, 7, 8, 9, and 10 is

**REVERSED**. However, the Magistrate Judge's ruling as to Bourg's statement to St. Paul

stands.

New Orleans, Louisiana this 27th day of August, 2007.

_____
HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE