UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KANSAS CITY COUTHERN RAILWAY CO., ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO:      05-01182** |
| **NICHOLS CONSTRUCTION CORP., ET AL.** | **SECTION: "C" (4)** |

Before the Court is **Kansas City Southern Railway Company's Motion to Quash and for Protective Order (R. Doc. 287)**, filed by the Third-Party Plaintiff, Kansas City Southern Railway Co. ("KCS Railway"). In opposition, the Plaintiff, Larry Selvage ("Selvage") submitted Plaintiff Larry Selvage's Response to KCS' Motion to Quash Gisclair & Associates Subpoena Duces Tecum and for Protective Order (R. Doc. 296).

The motion was heard with oral argument on October 17, 2007. At the hearing, the Court ordered KCS Railway to produced the requested discovery to the Court for an *in camera* review within 15 days of the hearing. On October 31, 2007, KCS Railway hand-delivered the documents for the Court's inspection.

**I.     Background**

On November 30, 2004, a KCS Railway train traveling through St. Charles Parish near St. Rose, Louisiana collided with a truck and low-boy trailer ("truck") that had stopped on the railroad

crossing. As the train approached, the truck did not move off the railroad tracks, resulting in the collision and the derailment of the train. The truck was owned by Nichols Construction Co. ("Nichols") and operated by Kenneth J. Bourg. Nichols later reorganized into Turner Industries Group, L.L.C. ("Turner").

Between March 29, 2005, and November 1, 2005, KCS Railway, a locomotive engineer named John R. Scott, and the conductor Larry E. Selvage all filed separate federal lawsuits against Nichols, Turner, and Bourg because of the accident. (R. Doc. 1; R. Doc. 73; R. Doc. 104.) These actions were eventually consolidated.

On July 19, 2005, Kristen R. Hatchett ("Hatchett"), a vocational rehabilitation counselor employed at Gisclair and Associates ("Gisclair"), wrote Selvage, requesting an initial interview to develop a vocational rehabilitation plan to assist him in returning to work and finding employment outside of KCS Railway. (R. Doc. 296-2, Ex. 1.) Hatchett indicated that she had been retained by KCS Railway. (R. Doc. 296-2, Ex. 1, p. 1.)

Selvage responded to Hatchett in a letter dated July 26, 2005. (R. Doc. 296-3, Ex. 2.) In the letter, Selvage communicated his willingness to participate in vocational rehabilitation, but indicated that he would only participate if Hatchett signed an affidavit swearing that she and Gisclair would not be involved in his litigation against KCS Railway and would not offer any adverse testimony against Selvage. (R. Doc. 296-3, Ex. 2.)

Selvage subsequently underwent a vocational evaluation interview with Margo G. Hoffman ("Hoffman"), a vocational consultant from American Rehabilitation Consultant Services, Inc. on June 28, 2007. (R. Doc. 296-4, Ex. 3.) Hoffman produced a vocational evaluation report on July 3, 2007. (R. Doc. 296-4, Ex. 3.)

On August 7, 2007, Selvage issued a subpoena duces tecum to Hatchett in Baton Rouge, Louisiana. (R. Doc. 287-6, Ex. A; R. Doc. 296-5, Ex. 4.) The subpoena requested Hatchett to produce documents prepared for and in connection with the case at the offices of Rome, Arata and Baxley in Pearland, Texas on September 1, 2007. (R. Doc. 287-6, Ex. A; R. Doc. 296-5, Ex. 4.) According to the caption on the subpoena, the subpoena was issued by the United States District Court for the Eastern District of Louisiana. (R. Doc. 287-6, Ex. A; R. Doc. 296-5, Ex. 4.)

KCS Railway seeks to quash the subpoena duces tecum issued to Hatchett, a non-party, and requests that the Court issue a protective order preventing the discovery of the documents sought in the subpoena. KCS Railway maintains that the subpoenaed documents are confidential, proprietary, and irrelevant because they pertain to its internal programs and because Selvage ultimately refused to undergo the requested vocational rehabilitation treatment.

In opposition, Selvage maintains information is relevant because it reveals KCS Railway's litigation tactics and Hoffman, another vocational consultant, relied upon the information acquired by Hatchett. Furthermore, Selvage asserts that KCS Railway did not produce a privilege log outlining its objections regarding the discovery of the documents, and thus waived the protection over the documents.

II. **Standard of Review**

   A. **Subpoena Power Under Rule 45**

Federal Rule of Civil Procedure ("Rule") 45 limits the subpoena power of the Court. Subsection (a)(2)(c) of Rule 45 provides that a subpoena "for production, inspection, copying, testing, or sampling," must issue "from the court, for the district where the production or inspection is to be made." Furthermore, under Rule 45(c)(3), upon timely motion, the court shall quash or

3

modify a subpoena if the subpoena requires disclosure of "a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(c)(3)(B)(i). When a district court orders the production of material under subdivision (i), the Rule requires that the court determine whether the party who seeks the material has (1) "a substantial need for the testimony or material that cannot be otherwise met without undue hardship" and (2) "ensures that the subpoenaed person will be reasonably compensated." Fed. R. Civ. P. 45(c)(3)(C).

### B.    Protective Orders Under Rule 26

The decision to enter a protective order is within the Court's discretion. *Thomas v. Int'l Bus. Mach.*, 48 F.3d 478, 482 (10th Cir. 1995). Rule 26(c) governs the issuance of protective orders. It provides in pertinent part:

> Upon motion by a party or by the person from whom discovery is sought . . . and for good cause shown, the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . . If the motion for a protective order is denied in whole or in part, the court, may, on such terms and conditions as are just, order that any party or other person provide or permit discovery.

Fed. R. Civ. P. 26(c). Specifically, under subsection (c)(7) of Rule 26, a protective order may be entered to protect "a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way."

Rule 26(c), however, contains a requirement that good cause be shown to support the issuance of a protective order, providing that "the burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998).

**III.     Analysis**

KCS Railway moves to quash the subpoena and requests that the Court issue a protective order preventing against the discovery of materials sought in the subpoena. KCS Railway contends that the documents sought in the subpoena are confidential and proprietary because they involve KCS Railway's internal vocational rehabilitation and "return to work" programs. KCS Railway asserts that it created the internal program to handle employee injuries and *to defend against personal injury lawsuits*. (R. Doc. 287-2, p. 3.) It further argues that the documents are irrelevant because Selvage ultimately refused to participate in the program with Hatchett and Gisclair.

Selvage counterargues that information is relevant because Hoffman, the retained vocational consultant, will be relying upon information about Selvage collected by Hatchett. Furthermore, Selvage contends that Hatchett is being subpoenaed as a fact witness because she initiated improper *ex parte* communication with him as a litigation tactic for KCS Railway. Selvage maintains that he is entitled to discover evidence on how KCS Railway's program is used for litigation purposes, and KCS Railway directly put the information at issue because the subject program relates to litigation. Finally, Selvage asserts that KCS Railway waived any of its protections over the requested documents because it did not produce a privilege log for the documents.

Before addressing the issue of whether the subpoena should be quashed, the Court must first determine if it is properly issued. Rule 45(a)(2)(c) provides that a subpoena must issue "from the court, for the district where the production or inspection" of the requested documents is to be made. Here, Selvage requests that Hatchett produce and permit the inspection and copying of various documents in Pearland, Texas, a location beyond the Eastern District of Louisiana. (R. Doc. 287-6, Ex. A; R. Doc. 296-5, Ex. 4.) However, the subpoena was issued by the United States District Court

5

of the Eastern District of Louisiana. (R. Doc. 287-6, Ex. A; R. Doc. 296-5, Ex. 4.) Consequently, based on Rule 45, the subpoena is procedurally defective because the subpoena is not issued from the court for the district where the production and inspection of the documents is to be had. Accordingly, the subpoena must be quashed.

### IV. Conclusion

Accordingly,

**IT IS ORDERED** that **Kansas City Southern Railway Company's Motion to Quash and for Protective Order (R. Doc. 287)** is **DENIED IN PART** and **GRANTED IN PART.**

**IT IS ORDERED** that KCS Railway's Motion to Quash is **GRANTED** because the subpoena is defective.

**IT IS FURTHER ORDERED** that KCS Railway's Motion for Protective Order is **DENIED.**

**IT IS FURTHER ORDERED** that KCS Railway retrieve their documents from the Court, no later than 7 days from the signing of this Order.

New Orleans, Louisiana this  22nd  day of January 2008

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**