UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KANSAS CITY SOUTHERN RAILWAY CO., ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO:     05-01182** |
| **NICHOLS CONSTRUCTION CORP., ET AL.** | **SECTION: "C" (4)** |

## ORDER

Before the Court is **Kansas City Southern Railway Company's Motion to Quash and for Protective Order (R. Doc. 339)**, filed by the Third-Party Plaintiff, Kansas City Southern Railway Co. ("KCS Railway").  In opposition, the Plaintiff, Larry Selvage ("Selvage") filed Plaintiff Larry Selvage's Response to KCS' Motion to Quash Gisclair & Associates Subpoena Duces Tecum and for Protective Order (R. Doc. 340).  Pursuant to the Court's Order (R. Doc. 342) on March 7, 2008, KCS Railway hand-delivered the documents in dispute for the Court's inspection on March 13, 2008.

**I.   Background**

On November 30, 2004, a KCS Railway train traveling through St. Charles Parish near St. Rose, Louisiana collided with a truck and low-boy trailer ("truck") that had stopped on the railroad crossing.  As the train approached, the truck did not move off the railroad tracks, resulting in the collision and the derailment of the train.  The truck was owned by Nichols Construction Co.

("Nichols") and operated by Kenneth J. Bourg. Nichols later reorganized into Turner Industries Group, L.L.C. ("Turner").

Between March 29, 2005, and November 1, 2005, KCS Railway, a locomotive engineer named John R. Scott, and the conductor Larry E. Selvage all filed separate federal lawsuits against Nichols, Turner, and Bourg because of the accident. (R. Doc. 1; R. Doc. 73; R. Doc. 104.) These actions were eventually consolidated.

On July 19, 2005, Kristen R. Hatchett ("Hatchett"), a vocational rehabilitation counselor employed at Gisclair and Associates ("Gisclair"), wrote Selvage, requesting an initial interview to develop a vocational rehabilitation plan to assist him in returning to work and finding employment outside of KCS Railway. (R. Doc. 340-2, Ex. 1.) Hatchett indicated that she had been retained by KCS Railway, and sought to obtain information from Selvage regarding his medical, educational, vocational, and social history. (R. Doc. 340-2, Ex. 1, p. 1.)

Selvage responded to Hatchett in a letter dated July 26, 2005. (R. Doc. 340-3, Ex. 2.) In the letter, Selvage communicated his willingness to participate in vocational rehabilitation, but indicated that he would only participate if Hatchett signed an affidavit swearing that she and Gisclair would not be involved in his litigation against KCS Railway and would not offer any adverse testimony against Selvage. (R. Doc. 340-3, Ex. 2.)

Selvage subsequently underwent a vocational evaluation interview with Margo G. Hoffman ("Hoffman"), a vocational consultant from American Rehabilitation Consultant Services, Inc. on June 28, 2007. (R. Doc. 340-4, Ex. 3.) Hoffman produced a vocational evaluation report on July 3, 2007. (R. Doc. 340-4, Ex. 3.)

On January 23, 2008[1], Selvage issued a subpoena duces tecum to Hatchett, requesting that she produce documents that she obtained or was provided in the subject matter from KCS Railway or its attorneys, including all records, reports, models, memos, emails, correspondence, and other materials prepared by Hatchett or others in her office. (R. Doc. 339-3, Ex. A, p. 3.) Selvage also requested Hatchett's file and billing records pertaining Selvage or arising from the instant case. (R. Doc. 339-3, Ex. A, p. 3.)

KCS Railway seeks to quash the subpoena duces tecum issued to Hatchett, a non-party, and requests that the Court issue a protective order preventing the discovery of the documents sought in the subpoena. KCS Railway maintains that the subpoenaed documents are confidential, proprietary, and irrelevant because they pertain to its internal programs and because Selvage ultimately refused to undergo the requested vocational rehabilitation treatment.

In opposition, Selvage maintains information is relevant because it reveals KCS Railway's litigation tactics and KCS Railway has failed to offer sufficient proof or factual support to meet its burden that the documents are proprietary and confidential. Therefore, Selvage asserts that KCS Railway is not entitled to a protective order, shielding against the discovery of Selvage's requested information.

## II.   **Standard of Review**

The decision to enter a protective order is within the Court's discretion. *Thomas v. Int'l Bus. Mach.*, 48 F.3d 478, 482 (10th Cir. 1995). Rule 26(c) governs the issuance of protective orders. It provides in pertinent part:

---

[1] The date on the subpoena duces tecum at issue erroneously reflects the date it was issued as January 23, 2007. However, in Selvage's brief, he indicates that the subpoena was issued on January 23, 2008. Furthermore, Selvage reissued the subpoena after the Court ruled that his earlier subpoena, issued on August 7, 2007, was procedurally deficient. Therefore, January 23, 2007 is a incorrect date.

3

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending--or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

Fed. R. Civ. P. 26(c). Specifically, under subsection (c)(1)(g) of Rule 26, a protective order may be entered "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."

Rule 26(c), however, contains a requirement that good cause be shown to support the issuance of a protective order, providing that "the burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998).

### III.   Analysis

KCS Railway moves to quash the subpoena and requests that the Court issue a protective order preventing against the discovery of materials sought in the subpoena. KCS Railway contends that the documents sought in the subpoena are confidential and proprietary because they involve KCS Railway's internal vocational rehabilitation and "return to work" programs. KCS Railway asserts that it created the internal program to handle employee injuries. It further argues that the documents are irrelevant because Selvage ultimately refused to participate in the program with Hatchett and Gisclair.

Selvage counterargues that Hatchett is being subpoenaed as a fact witness because she initiated improper *ex parte* communication with him as a litigation tactic for KCS Railway. Selvage

maintains that he is entitled to discover evidence on how KCS Railway's program is used for litigation purposes, and KCS Railway directly put the information at issue because the subject program relates to litigation.

After reviewing the requested discovery *in camera*, the Court concludes that the documents are relevant to the litigation, and therefore, the Court orders the production of all documents requested in Selvage's subpoena duces tecum.  In its motion, KCS Railway maintains that its vocational rehabilitation program primarily assists its injured employees in returning to work. However, upon review, the Court determines that the materials compiled by Hatchett for KCS Railway's vocational rehabilitation program  was also for legal purposes in defending against suit by Selvage.  The materials contain legal pleadings regarding the subject subpoena duces tecum and detailed logs of correspondence exchanged regarding this matter.  The materials reveal that KCS Railway created a paper record of Selvage's medical ailments or communications with Gisclair, and that Gisclair routinely reported this information to KCS Railway, including legal and medical discussions. KCS Railway touts its program as a means to help injured employees to help return to work at no cost, but the materials reveal that there is an additional purpose of litigation.  This purpose of the vocational rehabilitation was not disclosed when the "free" vocational rehabilitation services were offered to Selvage.  In fact, KCS Railway admitted in earlier pleadings that its internal vocational rehabilitation program was intended to assist in the defending of personal injury lawsuits. (R. Doc. 287-2, p. 3.)

Given the contents of the disputed documents, the Court finds that the documents are relevant and subject to production.  The Court further concludes that KCS Railway has failed to show good cause for why the Court should issue a protective order shielding the requested

5

information from discovery.  Specifically, KCS Railway fails to show that it will suffer annoyance, embarrassment, oppression, or undue burden or expense in producing the information, or that the information contains any confidential or proprietary information.  Rather, the requested information pertains directly to Selvage's condition or activities in the subject litigation and primarily consists of duplicative copies of legal documents and correspondence already filed into the record in this matter and logs containing factual information about Selvage.

### IV.   Conclusion

Accordingly,

**IT IS ORDERED** that **Kansas City Southern Railway Company's Motion to Quash and for Protective Order (R. Doc. 339)** is **DENIED.**

**IT IS FURTHER ORDERED** that KCS Railway retrieve their documents from the Court, no later than **seven (7) days** from the signing of this Order.

New Orleans, Louisiana this   21st   day of April  2008

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**