UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KANSAS CITY SOUTHERN RAILWAY COMPANY          CIVIL ACTION

VERSUS                                        NO. 05-1182 &
                                              consol. cases

NICHOLS CONSTRUCTION COMPANY, L.L.C.,         SECTION "C" 4
ET AL

**ORDER AND REASONS**[1]

Before the Court is a motion for summary judgment filed by the Defendant, Kansas City Southern Railway Co. ("KCS"), to dismiss claims brought against it by Plaintiffs John R. Scott ("Scott") and Larry Selvage ("Selvage") (collectively "Plaintiffs") under the Federal Employers Liability Act ("FELA"). Plaintiffs oppose the motion. The motion is before the Court on the briefs, without oral argument. After considering the memoranda, the record, and the applicable law, the Court GRANTS Defendant's motion for the reasons herein.

**Background**

This is a case about a railroad collision. On November 30, 2004, defendant Kenneth Bourg was driving a big-rig truck over the railroad grade crossing at Riverbend Boulevard. in St.

---

[1]Skelly McCay, a second-year student at Tulane University School of Law, assisted with the research and preparation of this decision.

1

Charles Parish, Louisiana, when the lowboy trailer he was pulling became lodged on the tracks.[2] The trailer, owned by defendant Nichols Construction (now Turner Industries, LLC), was hauling a fifty-ton crane, en route from St. Rose, Louisiana to Kenner, Louisiana. The truck driver, Bourg, attempted to release the trailer by reversing the tractor truck and then driving forward, but was unsuccessful. He then went to the back of the trailer where he engaged the hydraulic cylinders that raised the front portion of the trailer to its maximum height. Bourg got back into the truck and tried, again to no avail, to free the trailer. At this point, he dialed the number of his company's office in Jefferson, LA to report the incident. Bourg was relaying the KCS phone number he found on the crossing's emergency call box to the Nichols dispatcher when he heard the horn of an on-coming train. Rec. Doc. 370-8, p. 4.

The KCS train rounding the curve was under the control of Plaintiffs Scott and Selvage, and a third individual not a party to this action. Rec. Doc. 360-2, p. 2. Scott was the engineer on the lead locomotive and Selvage was in the second locomotive, completing paperwork. Rec. Doc. 370-19, p. 65. Because Selvage was in a trailing car at the time of the collision, he did not witness the incident and, other than being aware that the locomotive's brakes were engaged prior to impact, he had no notice of the impending crash. Id. at 66. Just before the train struck the trailer, Scott got out of his seat and crouched behind the engineer's console for protection. Rec. Doc. 360-8, p.130. Scott alleges injuries resulting from being thrown around the interior of the locomotive upon impact, specifically to his neck and back. Rec. Doc. 370, p. 3. In the second

---

[2] A lowboy trailer, or double dropdeck flatbed trailer, has eight wheels and is usually pulled by a ten wheel tractor-truck, forming the familiar 'eighteen-wheeler.' Lowboys have lower deck heights and ground clearances than other trailers, hence the name, and are typically used for carrying oversize/overweight loads. http://www.twna.org/trucking_terms.htm#l

locomotive, Selvage was thrown to the floor upon impact.  His car then derailed and overturned, requiring emergency personnel to free him.  Rec. Doc. 370-19, pp. 69-70.  Selvage alleges injuries to multiple parts of the left side of his body.  Id.

Plaintiffs' claims against KCS are brought under the Federal Employers Liability Act ("FELA"), 45 U.S.C. § 51 et seq.  Specifically, Plaintiffs allege that KCS failed to provide them with a safe workplace, including, but not limited to, failure to provide adequate warnings of the vehicle blocking the crossing, instructions on proper dispatching procedures, seat belts, proper padding on the interior of the cars, proper seats, and/or a safety zone.  Rec. Docs. 360-6, 360-7.  In the alternative, Plaintiffs allege that KCS was negligent in failing to provide a safe railroad crossing.  In total, Plaintiffs allege that their injuries were due in whole or in part to the negligence of KCS, its agents, servants, and employees acting in the course and scope of their employment.  Id.  KCS, in its motion for summary judgment and in its response to Plaintiffs' memorandum in opposition, moves to dismiss all of Plaintiffs' FELA claims against it pursuant to Federal Rule of Civil Procedure 56.  Rec. Doc. 360; Rec. Doc. 390.[3]  KCS argues that Plaintiffs have offered no evidence that the addition of the named safety apparatuses was either required of KCS or would have lessened or prevented Plaintiffs' alleged injuries.  Rec. Doc. 360, p. 1-2.  KCS also submits that Plaintiffs' negligence claims relating to the lack of seat belts or interior padding from the locomotive or to the failure to provide a safe crossing are preempted or

---

[3] The Court notes that KCS's motion for summary judgment responds to Plaintiffs' original complaints.  Subsequent to filing their complaints, Plaintiffs amended to include negligent failure to maintain a safe crossing as a cause of action against KCS, alternative to the claim that KCS failed to provide a safe work place.  Rec. Docs. 73 and 104.  KCS addresses all of Plaintiffs claims against it in its response to Plaintiffs' memorandum opposition to KCS's motion for summary judgment.  Rec. Doc. 388.

3

precluded by federal law and should be dismissed. Id.

**Law and Analysis**

Ordinarily, summary judgment is only proper when the record indicates that there is no "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56. A genuine issue of fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *see also, Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001). When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, however, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." *See Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871, 871-73 (1990); *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992).

The "initial burden" imposed on the moving party has two parts: the burden of

production and the ultimate burden of persuasion. *Celotex*, 477 U.S. at 330. The manner in which the moving party may satisfy the burden of production "depends upon which party will bear the burden of persuasion on the challenged claim at trial." *Id.* at 331. The Supreme Court identified two methods for a moving party to meet its burden of production when the burden of persuasion belongs to the non-moving party at trial. "First, the moving party may submit affirmative evidence that negates an essential element of the nonmoving party's claim." *Id.* Alternatively, "the moving party may demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.*

The Court notes, however, that the rules of the summary judgment game are different when the nonmoving party is a FELA plaintiff. As the Fifth Circuit recently articulated, in a FELA case, "the plaintiff's burden of proof is 'featherweight.'" *Howard v. Canadian Nat'l./Illinois Cent. R.R.*, 233 Fed. Appx. 356, 357 (5th Cir. 2007). The court observed that its precedents "clearly establish that in this Circuit, a judgment as a matter of law against the [FELA] plaintiff is appropriate 'only when there is a complete absence of probative facts' supporting the plaintiff's position." *Id.* (quoting *Rivera v. Union R. Co.,* 378 F.3d 502, 506 (5th Cir. 2004)). In *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969) (*en banc*) (overruled in other respects by *Gautreaux v. Scurlock Marine*, 107 F.3d 331, 336 (5th Cir. 1997)), the court held that "the FELA 'complete absence of probative facts' standard is in sharp contrast to the more demanding test applicable in *other* civil cases." *Howard*, 233 Fed. Appx. at 357 (quoting *Boeing*, 411 F.2d at 374-75). Namely, where surviving a motion for directed verdict ordinarily requires the nonmoving party to show a "conflict in substantial evidence to create a jury question," as opposed to offering an insufficient "mere scintilla of evidence," in FELA cases,

"the jury's power to engage in inferences must be recognized as being significantly broader." *Id.* at 357-58.

The Fifth Circuit recognized that the "congressional intent in enacting the FELA was to secure jury determinations in a larger portion of cases than would be true of ordinary common law actions" and that a "'trial by jury is part of the remedy in FELA cases.'" *Id.* at 357 (quoting *Boeing*, 411 F.2d at 371). So, FELA plaintiffs can survive dispositive motions by offering evidence which would be insufficient to overcome a similar motion in an ordinary civil case. Accordingly, the Court proceeds with the understanding that the evidentiary standards in FELA cases are "highly favorable to the plaintiff" and that the Court must be as demanding of the defendant moving for summary judgment as it is "protective of the plaintiff's right to a jury trial." *Rivera,* 378 F.3d at 506 (quoting *Woden v. Missouris Pac. R.R. Co.*, 862 F.2d 560, 561 (5th Cir. 1989)).

The standards for establishing negligence liability under the FELA are also far more permissive than they are in common law negligence actions. In a decision relied upon by the Fifth Circuit, the Supreme Court stated the governing principles in FELA cases:

> the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury . . . It does not matter that, from the evidence, the jury may also with reason, on the grounds of probability, attribute the result to other causes . . . for practical purposes the inquiry in these cases today rarely presents more than a single question whether negligence of the employer played any part, however small, in the injury or death which is the subject of the suit.

*Rogers v. Missouri Pac. Ry.*, 352 U.S. 500, 506-508 (1957) (quoted in *Nivens v. Sw. Ry. Co.*, 425 F.2d 114, 118 (5th Cir. 1970); *see also*, *Gautreaux*, 107 F.3d at 335). In order to prevail in a negligence action, a plaintiff asserting claims under the FELA must prove (1) that the defendant

6

is a common carrier by railroad engaged in interstate commerce, (2) that he was employed by the defendant with duties advancing such commerce, (3) that his injuries were sustained while he was so employed, and (4) that his injuries resulted from the defendant's negligence. *See Frank v. Kansas City S. Ry. Co*, Civil Action No. 07-1341, 2008 WL 2789052, at *2 (E.D. La. July 17, 2008) (citing *Weaver v. Missouri Pac. R.R. Co.*, 152 F.3d 427, 429 (5th Cir. 1998)). Clearly, only the fourth element, i.e. KCS's alleged negligence, is an issue in this case. Because the FELA provides the exclusive remedy for railroad workers injured as a result of employer negligence, "the statute authorizes an injured railroad employee to recover damages from his employer for 'injury or death resulting in whole or in part from the [railroad's] negligence.'" *Rivera*, 378 F.3d at 507 (quoting 45 U.S.C. § 51). Thus, in order to survive summary judgment, Plaintiffs in this case need only offer up some evidence that KCS's negligence "played any part, even the slightest, in producing [their] injur[ies]." *Rogers*, 352 U.S. at 506. However, the FELA does not preclude summary judgment. Plaintiffs seeking relief under the FELA still must provide the Court with at least *some* evidence indicative that a factual question exists as to a railroad employer's negligence. As a court in this jurisdiction held, "to survive summary judgment, even under the lighter standard applicable to FELA cases, the plaintiff must produce *some* evidence that the railroad's negligence caused his injuries." *Guerrera v. Union Pac. R.R. Co.*, No. CIV. A. 01-2483, 2002 WL 922386 at *1 (E.D. La. May 3, 2002) (emphasis added).

Plaintiffs contend that KCS's motion for summary judgment must be denied because KCS fails to address Plaintiffs' claim, introduced in their amended complaints, that KCS failed to provide a safe crossing. Rec. Doc. 370, p. 8. That failure, the Court notes, results from KCS having moved for judgment on the wrong pleadings, i.e. Plaintiffs' pre-amendment complaints.

In reply to Plaintiff's opposition, KCS submits that it is "entitled to the benefit of this Court's prior ruling regarding crossing design issues as set forth in the Motion for Summary Judgment to Dismiss Affirmative Defenses." Rec. Doc. 388, p. 2, fn. 1. Here, KCS refers to this Court's August 6, 2007 ruling, granting summary judgment in favor of defendant Prudential Insurance Company of America ("Prudential"). *See Kansas City S. Ry. Co. v. Nichols Const. Co.*, 2007 WL 2265513 (E.D. La. August 6, 2007) (Berrigan, J.). That ruling, recently affirmed by the Fifth Circuit, recognized that, through an Act of Dedication ("Act"), Prudential transferred to the Parish of St. Charles all responsibility for the roadway over the railroad. *Id.* at *3. By dedicating the crossing over to the public, Prudential was "relieved of any further responsibility under the terms of the [Public Road Crossing Agreement]." *Id.* Furthermore, the Court held that, through the Act, Prudential unambiguously agreed to "assign, transfer, dedicate, and convey unto St. Charles Parish all of its rights, title and interest in and to the Agreements with . . . Louisiana & Arkansas Railway Company."[4]

Under the Act, the Parish of St. Charles was required to assume "full responsibility for the maintenance and operation of the railroad crossings and signals and compliance with the terms of the Agreements affecting said crossings." Rec. Doc. 234, Exh. 3. In affirming this Court's decision, the Fifth Circuit particularly concurred with this Court's finding that the Act contemplated that St. Charles Parish would assume whatever responsibilities Prudential may have incurred in originally designing and constructing the roadway. *Kansas City So. Ry. Co. v.*

---

[4] Louisiana & Arkansas Railway Company ("L & A"), KCS's predecessor, granted Prudential a servitude of passage across its right of way and track so that Prudential could construct a public roadway to serve the Riverbend Business Park in St. Charles Parish. KCS, 2007 WL 2265513 at *1.

*Prudential Ins. Co. of America,* 2008 WL 2645651, at *1 (5th Cir. July 7, 2008). Additionally, this Court held that any liability attaching to Prudential for the design, construction, or maintenance of the crossing was preempted five years after the crossing's completion by LA. REV. STAT. § 9:2772. Neither parties dispute that the roadway was completed and dedicated to the public on or about May 15, 1984. By affirming this Court's ruling, the Fifth Circuit established that St. Charles Parish is the proper party against whom to claim liability for the condition of the Riverbend Boulevard railroad crossing at the time of the KCS accident.[5]

Finally, it is clear that Scott and Selvage are aware of both the Prudential-L & A Public Road Crossing Agreement and the Act of Dedication of the roadway to the Parish of St. Charles, including all of the rights and obligations affected by the Act. Rec. Doc. 73, pp. 11-12; Rec. Doc. 104, pp.11-13. Plaintiffs' amended complaints allege that St Charles Parish assumed full responsibility for the maintenance and operation of the railroad crossings through the Act as well as compliance with any other obligations established in the agreement between KCS and Prudential. *Id.* Plaintiffs further claim that St. Charles Parish is liable to them for any and all damages resulting from the railroad collision as a result of its failure to fulfill those obligations, or, alternatively, that it is responsible for the design, construction, and maintenance of the roadway and incurs liability that way. *Id.* Given the recent rulings of this Court and the Fifth Circuit, not to mention Plaintiffs' own admissions of St. Charles Parish's exclusive control over

---

[5]The Court recognizes that KCS performed some work on the railroad crossing in question in 1997. The 1997 resurfacing project and its effect on KCS's liability for the railroad collision is a matter of contention in other cases consolidated with the instant litigation. However, Plaintiffs make no mention of the 1997 work in their amended complaint, and any allegation that the work resulted in KCS failing to provide a safe crossing would be barred by five-year prescription, pursuant to LA. REV. STAT. § 9:2772. *See Kansas City S. Ry. Co.*, 2007 WL 2265513, at *4.

the site of the collision, there is no question of material fact surrounding KCS's alleged negligent failure to provide a safe crossing. Therefore, summary judgment is warranted on Plaintiffs' claim that KCS negligently failed to provide and maintain a safe crossing.

The Court turns now to the question of whether KCS was negligent in failing to provide Plaintiffs' with a safe workplace, namely by not equipping its locomotives with seat belts, padding, and other safety features. Again, the applicable standard in cases arising out the FELA is whether a plaintiff can show some evidence, however slight, that a railroad employer's negligence caused his workplace injuries. The tried and true showing of a 'genuine issue of material fact' is not required of a FELA plaintiff seeking to survive summary judgment and have his case tried before a jury. *Boeing Co. v. Shipman*, 411 F.2d 365, 371, 374-75 (5th Cir. 1969). KCS relies primarily on the Fifth Circuit's decision in *Lane v. R.A. Sims*, 241 F.3d 439 (5th Cir. 2001) to support its case that Plaintiffs' claims for failure to provide seat belts and interior padding are preempted by the governing regulations of the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. §§ 20101-20153 and should be dismissed as a matter of law. Rec. Doc. 388, p. 5.[6] The issue in *Lane* was whether a railroad employee could pursue a negligence action

---

[6]KCS uses the term 'preemption,' pleading it first as an affirmative defense in its answer to Plaintiffs' complaints. Rec. Doc. 388, p. 3. In its memorandum in response to Plaintiffs' opposition, KCS speaks of Plaintiffs's claims being *preempted* or *precluded* by the FRSA. Rec. Doc. 388, p. 5. Although one federal statute cannot preempt another and the FRSA's preemption clause is directed at state laws that seek to regulate railroad safety, the Court understands KCS's argument to sound in claim-preclusion, rather than in preemption. Specifically, KCS contends that its compliance with one federal law and regulations *precludes* liability under the FELA. Any further argument, in this context, over preemption versus preclusion is semantic. Perhaps one court put it best by holding that "FRSA supercedes FELA." *Crabbe v. Consol. R. Corp.*, 2007 WL 3227584, slip op. at *3 (E.D. Mich. 2007). The Court does not accept Plaintiffs' argument that preclusion is an affirmative defense that must be pled under Fed. R. Civ. P. 8(c)(1) and that KCS's motion must be denied accordingly.

against his employer for excessive operating speeds when the speed of the train in question was within the limits promulgated under the FRSA and its accompanying regulations.  241 F.3d at 441-42.  The Court noted that the purpose of the FRSA is "to promote safety in every area of railroad operations and reduce railroad related accidents and incidents."  *Id.* at 442 (quoting 49 U.S.C. § 20101).  The FRSA "authorizes the Secretary of Transportation to 'prescribe regulations and issue orders for *every* area of railroad safety.'"  *Id.* (quoting 49 U.S.C. § 20103(a) (emphasis added).  In addition, the FRSA "provides that '[l]aws, regulations, and orders *related to railroad safety* shall be *nationally uniform* to the extent practicable.'"  *Id.* (quoting 49 U.S.C. 20106) (emphasis in original).

      The plaintiff in *Lane* argued that the FRSA's goals of national uniformity in railroad safety laws did not preclude an excessive speed claim under FELA because the two statutes are not meant to conflict.  *Id.*  That is to say, according to the plaintiff in *Lane*, the FRSA only establishes minimum safety requirements and does not preclude a finding of FELA negligence if "*reasonable* railroads would have taken additional precautions to prevent injury to their employees."  *Id.* (emphasis in original).  The Fifth Circuit rejected this argument.  Taking into account Congress' goal of establishing nationally uniform safety standards and citing holdings from other jurisdictions that FRSA compliance precludes FELA liability, the court found that summary judgment on Lane's excessive speed claim was warranted.  *Id.* at 443 (citing *Waymire v. Norfolk & W. Ry. Co.*, 65 F. Supp. 2d 951, 955 (S.D. Ind. 1999), *aff'd*, 218 F.3d 773 (7th Cir. 2000), holding that a railroad could "at one time be in compliance with federal railroad safety standards with respect to certain classes of plaintiffs yet found to be negligent under the FELA with respect to other classes of plaintiffs for the very same conduct.").  The Fifth Circuit held

that allowing Lane's FELA claim to proceed would have the undesirable and untenable effect of making "the railroad safety regulations established under the FRSA virtually meaningless" and "would further undermine uniformity." *Id.* at 444.

Plaintiffs argue that KCS's reliance on *Lane* is misguided. *Lane* concerned a railroad's compliance with a section of the FRSA that *explicitly mandated* a specific maximum speed for locomotives, while the question in the instant case is whether the FRSA precludes FELA claims when the FRSA and relevant sections of the Code of Federal Regulations are *completely silent* as to seat belts and padding. Plaintiffs argue that this distinction defeats *Lane* being the controlling case here. Plaintiffs urge that the Court should instead follow the earlier Fifth Circuit precedent of *Weaver v. Missouri Pac. R.R. Co.*, 152 F.3d 427 (5th Cir. 1998). Rec. Doc. 391-3, p. 2. In so arguing, Plaintiffs insist on a rule of statutory interpretation under which claim-preclusion is an available defense when a complied-with regulation mandates comportment with a specific standard. On the other hand, if a defendant railroad complies with a regulation's express standards and an employee is injured as a result of some factor not contemplated by the regulation, then claim-preclusion is not automatic, and the employee can proceed with a negligence cause of action under the FELA  Rec. Doc. 391-3, p. 2.

In *Weaver*, the Fifth Circuit considered whether a railroad's full compliance with the Locomotive Inspection Act ("LIA") could preclude a finding of negligence. 152 F.3d at 428-29. The plaintiff in *Weaver* was a train engineer who was injured when someone threw a bottle through an open window of the engine car, hitting him in the head and rendering him unconscious. 152 F.3d at 428. Weaver sued his employer under the FELA, alleging that the railroad was negligent by creating an unsafe workplace by failing to air condition the engine car,

forcing Weaver to have his window open, and by failing to alert Weaver to the risk of projectiles entering the car. *Id.* The railroad argued that Weaver's negligence claims were "preempted" by the railroads's compliance with regulations promulgated under the LIA, namely 49 C.F.R. § 229.119 (b) and (d) (1998). *Id.* at 429. Those regulations provided for cab windows providing unobstructed views and for heating and ventilation, but neither required air conditioning. *Id.* The Court rejected the railroad's preemption argument, noting as an initial matter that the preemption doctrine was not at issue because the case concerned the interaction of two federal statutes, the LIA and the FELA. *Id.* (citing *Texas Manufactured Hous. Ass'n. v. City of Nederland*, 101 F.3d 1095, 1099 (5th Cir. 1996). The court then held that the LIA regulations with which the railroad was in full compliance were not premised on providing safety from the type of harm that befell the plaintiff worker. *Id.* at 430. Because the purpose of those regulations was only to ensure proper ventilation, a minimum temperature, and an unobstructed view, the LIA did not completely occupy the field of locomotive-employee safety. The court held, therefore, that "compliance with the LIA and accompanying regulations is not determinative of [the railroad's] negligence under FELA" for injuries unassociated with ventilation, temperature, or view. *Id.* Plaintiffs suggest that this Court should read *Weaver* to hold that regulatory compliance does not preclude tort liability and argue that the factual similarity between *Weaver* and the instant case, i.e. that both concern 49 C.F.R. § 229, makes it a better guide than *Lane*. Rec. Doc. 391-3, pp. 2-3.

     Contrary to assertions by both parties, the Court does not find itself in the position of choosing which Fifth Circuit decision to follow, because *Lane* and *Weaver* do not provide differing opinions on how a district court should interpret the relevant railroad regulations and

13

apply them in a FELA case. *Lane* and *Weaver*, both authored by Judge Barksdale, are consistent in their statutory interpretation and in their findings of claim preclusion, and the Court can follow the collective guidance of the two decisions in forming its own. The Court first recognizes, consistent with the Fifth Circuit, that the FRSA and 49 C.F.R. § 229 are safety statutes. 49 C.F.R. § 229 is titled 'Railroad Locomotive Safety Standards' and § 229.119 specifically prescribes the conditions of "cabs, floors, and passageways" of locomotives. Both parties concede that 49 C.F.R. § 229.119(a) is the only applicable regulation governing train seats. The regulation reads in full: "Cab seats shall be securely mounted and braced. Cab doors shall be equipped with a secure and operable latching device." 49 C.F.R. § 229.119(a). The Fifth Circuit has never found 49 C.F.R. § 229 not to be a safety statute. Rather, in *Weaver*, the court simply observed that the purpose of 49 C.F.R. § 229.119 was to ensure proper ventilation, a reasonable cab temperature and an unobstructed view from the cab windows, all of which are mandated safety features. 152 F.3d at 430. What 49 C.F.R. § 229.119 was *not* meant to cover, however, was the risk of foreign objects entering the cab and injuring a railroad employee, and so, in *Weaver*, a question remained as to whether the defendant could be found negligent for failing to guard against that risk, despite being in full compliance with the regulation. *Id.* In *Lane*, however, the court dismissed an excessive-speed negligence claim where the train in involved in the collision was traveling under the speed limit set by 49 C.F.R. § 213.9 and the principle purpose of that regulation was to reduce railroad-related incidents. *Lane*, 241 F.3d at 442-44.

       The rule emerging from *Lane* and *Weaver* appears to be that the types of dangers and precautions contemplated by a railroad safety regulation are determinative of whether or not a

railroad's compliance with regulations will shield it from liability. More to the point, if an employee's injuries come about in a way not contemplated by a safety regulation, then the railroad's compliance with that regulation might not preclude its having failed to exercise a reasonable standard of care. *See also Tufariello v. Long Island R. Co.*, 458 F.3d 80, 86 (2nd Cir. 2006) (holding that a railroad employee could bring a negligence claim against his employer for hearing loss resulting from long-term exposure to train horns because no FRSA preclusion existed where the FRSA only prescribed *minimum* sound levels for warning devices on trains).[7] The court's task in *Weaver* was to determine whether 49 C.F.R. § 229.119(b) and (d) occupied the area of railroad safety to the extent that they were meant to guard against the harm caused by objects being thrown into a cab from the outside. This Court is faced with a similar question about the relevant statute in this case, 49 C.F.R. § 229.119(a) and its application to the incident and injuries in this case. Namely, the Court asks whether § 229.119(a) is meant to prescribe fully the condition of cab seats so as to prevent foreseeable injuries that a railroad employee could incur while using the seat, or whether it is meant to achieve some other end, such as mandating that a chair be situated to provide an engineer with optimal visibility or access to controls.

It is difficult to conceive that a regulation requiring that cab seats be "securely mounted and braced" could be intended to provide anything other stability and security for the person

---

[7] The Second Circuit articulated the *Weaver* / *Lane* principle in its own way:"[t]he FRSA regulations here, though, do not address the circumstances under which railroad employees must be provided with hearing protection. Thus, irrespective of whether, in order to establish uniform national standards as to minimum train horn volumes, the FRSA precludes a negligence action brought under FELA for excessive volume of the locomotive horns . . . the FRSA does not preclude a suit based on the alleged failure to equip an employee with hearing protection." *Tufariello*, 458 F.3d at 86.

sitting in those seats. Thus, if a railroad complies with § 229.119(a) and an employee is injured in his seat during a collision, then the employee's negligence claim could be precluded.[8] *See supra* p. 14. Furthermore, because 49 C.F.R. § 229.119(a) seems to be the federal code's only statement about train seat safety, regardless of the variable circumstances in which even securely mounted and braced seats could be unsafe, then a court following the Fifth Circuit's rulings in *Weaver* and *Lane* would find that a railroad's compliance with § 229.119(a) precludes a question of its negligently failing to equip cab seats with *additional* safety features, such as seat belts.

The Court is mindful that the FRSA does not always preclude FELA claims, as in cases where no complied with regulations are meant to guard against the injury suffered by the plaintiff and the railroad's having exercised a reasonable standard of care becomes a material fact question. However, the facts before the Court in this case, taken with governing statutes that the Court has been charged to interpret, are highly unfavorable to Plaintiffs' claims. The controlling regulations were complied with in full by KCS, and the Court finds that 49 C.F.R. § 229.119(a) was intended to provide railroad employees with safe seating. Moreover, there is precious little evidence in the record to indicate that the presence of seat belts would have changed the outcome of the crash to the extent that a jury could find that the absence of seat belts was the cause of Plaintiffs injuries.

---

[8]The facts of the instant case are less straightforward. Selvage's car overturned upon the train's impact with the trailer and Scott was not in his seat at the time, but was on the floor crouching behind the engineer's console. Complicating Plaintiffs' negligence claims is the fact that Scott testified that he did not believe that seat belts were necessary, standard, or required. Rec. Doc. 360-8, Exh. C. Scott further stated that it was common practice for engineers to move to the floor of the cab prior to a collision, that he believed the floor was the safest place to be, and that a seat belt would not have helped him in the situation. Id. These issues, however, would be more pertinent to a jury looking for causation under FELA negligence standards than they are to the Court's deciding whether or not it can grant summary judgment.

16

The Court is also bound to follow the Fifth Circuit's decision in *Lane v. R.A. Sims, Inc.*, despite Plaintiffs' urging, to the contrary, that *Weaver v. Missouri Pac. R.R. Co.* should control. Finding that a FELA plaintiff's "excessive-speed negligence claim" was precluded by the railroad's compliance with FRSA speed limit regulations, the court in *Lane* established that FELA negligence claims against a railroad whose regulatory compliance satisfies the regulation's intended safety purpose cannot withstand a motion for summary judgment. *Lane*, 241 F.3d at 443. The Fifth Circuit also advised that a court must consider the underlying goal of the FRSA and accompanying regulations of establishing uniformity in "every area of railroad operations." 49 U.S.C. § 20101. In the court's words,

> allowing juries in FELA cases to find negligence based on excessive speed, even though [the train] did *not* exceed that set by the FRSA regulations, would further undermine uniformity, because it would result in the establishment . . . of varying, uncertain speed limits . . . at the same crossing, depending on the time of day, traffic conditions, and other variables.

*Lane*, 241 F.3d at 443-44. Such is the case here. If the Court were to hold that a question exists as to KCS's negligent failure to equip its trains with seat belts and other safety devices specifically not required by regulations with which KCS is otherwise in full compliance, it would impose a duty on KCS to diverge from federally mandated safety requirements that are intended to provide national uniformity in all areas of railroad safety. Any such imposition must come about through statutory revision, not the through Court's interpretation and application of federal law. Accordingly, KCS's compliance with the FRSA and 49 C.F.R. § 229.119(a) sufficiently precludes Plaintiffs' negligence claim as to additional safety devices and KCS is entitled to judgment as a matter of law.

**Conclusion**

For the reasons stated above, it is ORDERED that KCS's motion for summary judgment is GRANTED.  Rec. Doc. 360.

New Orleans, Louisiana, this 13th day of August, 2008.

                                          HELEN G. BERRIGAN
                                          UNITED STATES DISTRICT JUDGE