UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KANSAS CITY SOUTHERN RAILWAY COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 05-1182 &** <br> **consol. cases** |
| **NICHOLS CONSTRUCTION COMPANY, L.L.C., ET AL** | **SECTION "C" 4** |

**ORDER AND REASONS**[1]

Before the Court is a motion for partial summary judgment, filed by Plaintiff Kansas City Southern Railway Company ("KCS"), to dismiss certain affirmative defenses. Defendants, Turner Industries, LLC ("Turner") and St. Charles Parish, oppose the motion. The motion is before the Court on the briefs without oral argument. After considering the memoranda of counsel, the record, and the applicable law, the motion is GRANTED IN PART and DENIED IN PART.

**Background**

On November 30, 2004, a train and a tractor trailer collided at the Riverbend Boulevard railroad crossing in St. Charles Parish, Louisiana. The owner of the train, KCS, filed suit in

---

[1] Skelly McCay, a second-year student at Tulane University School of Law, assisted with the research and preparation of this decision.

Federal Court on March 19, 2005, naming Turner and the Turner employee who had been driving the tractor trailer, Kenneth Bourg, as defendants. Rec. Doc. 1, p. 1-2. KCS then filed an amended complaint in which it added, among others, Prudential Insurance Company of America ("Prudential") and the Parish of St. Charles ("the Parish") as defendants. Rec. Doc. 16., p. 1. KCS alleges that Turner is liable, under the doctrine of *respondeat superior*, for extensive damage to KCS property allegedly resulting from Kenneth Bourg's negligent operation of the tractor trailer. Rec. Doc. 1, p. 3. In addition, KCS put forth negligence claims against Turner, including, but not limited to, failure to train its employees as to the proper operation of a lowboy trailer at a crossing and failure to monitor its employees as required. Id. In its amended complaint, KCS alleges that the Parish is responsible for the condition of the railroad crossing at the time of the accident and is, therefore, liable to KCS for damages it sustained as a result of the collision. Rec. Doc. 16, p. 2-3. KCS specifically alleges that the Parish was negligent in failing to properly design, construct, and maintain the grading, roadway surfaces, and approaches to the subject railroad crossing to allow the free-flow of commercial vehicular traffic. Id.

Answering KCS's complaint, Turner pleads fault on the part of the Plaintiff, or comparative negligence, as an affirmative defense to KCS's claims. Rec. Doc. 4, p. 6-7. Specifically, Turner alleges that KCS negligently operated the train in question at an unsafe speed under the circumstances; that KCS was responsible for the defective design, construction, and maintenance of the crossing; and that KCS was negligent in failing to adequately survey the crossing to ascertain its allegedly defective condition. Id. The Parish, answering KCS's first amended complaint, avers that KCS's damages were a result of its own negligent operation of the train in question and/or of its failing to properly design and maintain sections of the railroad

crossing. Rec. Doc. 144, p. 3. The Parish further argues that any indemnity KCS asserts against claims arising out of the condition of the railroad crossing is abrogated by KCS's 1997 resurfacing of the tracks and road surfaces of the crossing. Id. KCS now moves the Court to dismiss these affirmative defenses and contends that they are precluded by this Court's previous decisions or by federal law. Rec. Doc. 355-2.

**Law and Analysis**

The Court notes as an initial matter that KCS has not filed a motion to strike "any insufficient defense" pursuant to FED. R. CIV. P. 12(f). Although Motions to strike matter from the pleadings are disfavored and infrequently granted, "a motion to dismiss a defense is proper when the defense is insufficient as a matter of law." *Resolution Trust Corp. v. Ayo*, Civ. A. No. 92-0882, 1993 WL 8612, at *1 (E.D. La. Jan. 4, 1993) (citing *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045 (5th Cir. 1982). The Court treats KCS's motion to dismiss affirmative defenses as a motion for partial summary judgment and applies the standards of FED. R. CIV P. 56.

Summary judgment is only proper when the record indicates that there is no "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56. A genuine issue of fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *see also, Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001). When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm*

*Mut. Auto. Ins. Co.,* 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, however, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." *See Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871, 871-73 (1990); *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992).

Both Turner and the Parish plead the affirmative defense of comparative fault and allege that the KCS train that collided with the Turner trailer was negligently operated or was traveling at an unsafe speed. Rec. Doc. 4, p. 7; Rec. Doc. 144, p. 3. The Court can find no evidence in the record to suggest that the KCS train was operating at an unsafe or unusual speed. Turner and the Parish make no attempt to substantiate their unsafe speed defenses beyond asserting them in their original answers, nor do they oppose KCS's motion for summary judgment with respect to the train's speed. Rec. Doc. 390, p. 2; see Rec. Docs. 366 and 372. In fact, the only evidence relating to the speed of the train at the time of the collision suggests that the train was within the federally mandated limits for a commercial freight train traveling on that line of tracks. Under the Federal Railroad Safety Act ("FRSA") and accompanying regulation 49 C.F.R. § 213.9(a),

the maximum allowable operating speed for the KCS train would have been 60 miles per hour.[2] The KCS engineer operating the train in question, Plaintiff J.R. Scott, testified that, at the time of the collision, the train was running at or below 49 m.p.h., the maximum speed authorized by KCS.  Rec. Doc. 355-2, Exh. E.

Furthermore, the Supreme Court has held that excessive speed negligence claims are preempted in cases where the train was traveling within the federal speed limits.  *CSX Transp., Inc., v. Easterwood*, 507 U.S. 658 (1993); *see also Holland v. Norton*, 70 F. Supp. 2d 666, 670 (E.D. La., 1998) ("the law provides that when a train is operating within the applicable FRA speed limits, any claim based upon excessive speed is preempted").  Because neither Turner nor the Parish have proffered any evidence to the contrary, it is undisputed in this matter that the KCS train was traveling well within its federally mandated limits.  Any additional claim that the KCS train should have been traveling at a lower rate of speed when it braked on approach to the Riverbend Crossing is preempted by federal law.  The absence of any genuine issue of material fact concerning the appropriateness of the KCS train speed render an excessive speed defense untenable and legally insufficient.  Accordingly, Defendants' affirmative defense that KCS was comparatively negligent in operating its locomotive or traveling at an unsafe speed is dismissed.

Turner and the Parish also assert the affirmative defense of comparative negligence by way of a claim that KCS breached its duty to properly design/re-design, construct/re-construct, and maintain the Riverbend Boulevard crossing.  Rec. Doc. 4, pp. 6-7; Rec. Doc. 144, p. 3.  The

---

[2]The FRSA was enacted in 1970 "to promote safety in all areas of railroad operations and to reduce railroad related accidents."  45 U.S.C. § 421.  Under authority granted by the FRSA, the Secretary of Transportation establishes maximum speeds for all cargo and passenger trains depending on the class of track on which the train travels. *See* 49 C.F.R. § 213.9(a).

matter of which party to this litigation bore responsibility for the condition of the railroad crossing was previously decided by this Court in a ruling affirmed by the Fifth Circuit.  In *Kansas City S. Ry. Co. v. Nichols Const. Co., L.L.C.*, this Court granted summary judgment in favor of Prudential Insurance Company of America ("Prudential").  Civil Action No. 05-1182, 2007 WL 2265513 (E.D. La., Aug. 6, 2007).  Prudential moved for dismissal of claims brought against it by KCS for negligent maintenance of the railroad crossing and asserted indemnity against KCS and other plaintiffs.  The facts of that dispute traced back to February 23, 1981, when Prudential entered a Public Road Crossing Agreement ("Agreement") with KCS's predecessor, Louisiana & Arkansas Railway Company ("L&A").  Rec. Doc. 234, Exh. 1; Rec. Doc. 234, Exh. 2.  In the Agreement, L&A granted Prudential a servitude of passage across its right of way and track so that Prudential could construct a public roadway to serve the Riverbend Business Park. Rec. Doc. 234, Exh. 2.  Prudential agreed to "perform, or cause to be performed, al [sic] grading, drainage and finished road service made necessary by the installation of the above mentioned crossing, at Prudential's sole cost, risk and expense, and . . . thereafter maintain the grading, drainage and finished road surface at its sole cost, risk and expense."  Id.  Prudential also agreed to "indemnify and hold L&A harmless from all claims, actions or demands made by third persons for property damage, bodily injuries, death benefits or workmen's compensation benefits arising out of the maintenance and operation of the roadway in question and caused by the negligence of Prudential."  Id.

> The parties further agreed that,
>
> [i]t is the intention of Prudential to timely dedicate the public road leading to and from the said crossing, as well as the servitude of crossing, to the public. Accordingly, notwithstanding anything herein to the contrary, in the event the roadway is so dedicated to the public and accepted for public maintenance,

>Prudential is relieved of any further responsibility under the terms of this Agreement.

Id. As stipulated in Prudential's motion for summary judgment, all parties agreed that the Riverbend roadway surface was completed on or before May 15, 1984. Rec. Doc. 234.[3] On that day, Prudential dedicated the roadway crossing to public use through an Act of Dedication ("Act") to the Parish.[4] Id. The Parish approved the execution of the Act with Ordinance No. 84-5-3. Rec. Doc. 234, Exh. 5. In the Act, Prudential agreed to "assign, transfer, dedicate and convey unto St. Charles Parish all of its rights, title and interest in and to the Agreements with . . . Louisiana & Arkansas Railway Company." Rec. Doc. 234, Exh. 3. The Act required that the Parish assume "full responsibility for the maintenance and operation of the railroad crossings and signals and compliance with the terms of the Agreements affecting said crossings." Id. The Act also stated that, "Prudential is herewith released from any further liability and responsibility under the terms of said Agreements." Id.

The Parish alleges that alterations made to the crossing in 1997 by KCS render the Parish's total obligation to maintain the roadway and crossing null and void. Rec. Doc. 144, p.3. Turner argues in more detail that, in 1997, KCS completed a resurfacing project that failed to comply with industry and government standards and that the very fact that KCS performed work on the crossing raises an issue of material fact as to the viability of Turner's comparative fault defense. Rec. Doc. 394-4, p. 2. In support, Turner has submitted into evidence the report of

---

[3] There were no allegations that Prudential provided design, construction, or maintenance to the railroad crossing after May 15, 1984.

[4] All plaintiffs and defendant Prudential recognized this Act of Dedication. Rec. Doc. 234; Rec. Doc. 73; Rec. Doc. 104.

Forrest R. Van Schwartz, which states that KCS's 1997 "renewal" of the crossing surface raised the crossing's gradients to a level higher that recommended by industry standards. Rec. Doc. 394-5, Exh. A. Mr. Schwartz's report further submits that KCS's resurfacing project violated guidelines set by the American Association of State Highway and Transportation Officers ("AASHTO") intended to "prevent drivers of low-clearance vehicles from becoming caught on the tracks." Id. Turner also points out that the AASHTO guidelines were adopted as regulation by the Federal Highway Administration in 1993 under 23 C.F.R. § 625.4. Id.

KCS argues in reply that Defendants' comparative negligence defense is legally unsustainable because KCS enjoys either the protection of peremption or prescription under LA. REV. STAT. § 9:2772 or LA. CIV. CODE ART. 3458. Rec. Doc. 380-4. LA. REV. STAT. § 9:2772 states in relevant part:

> [n]o action . . . arising out of an engagement of planning, construction, design, or building immovable or movable . . . shall be brought against any person performing or furnishing the design, planning, supervision inspection . . . *or improvement to immovable property* . . . (1)(a) more than five years after the date of the registry in the mortgage office of acceptance of work by the owner. (b) If no such acceptance is recorded within six months from the date the owner has occupied or taken possession of the improvement, in whole or in part, *more than five years after the improvement has been thus occupied by the owner.*

(emphasis added). This Court previously held that LA. REV. STAT. § 9:2772 barred any KCS claims against Prudential for negligent design and construction of the Riverbend Boulevard crossing because well over five years had passed between Prudential's construction of the roadway crossing and KCS's suit. *Kansas City S. Ry. Co. v. Nichols Const. Co., L.L.C.*, No. Civ. A. 05-1182, 2007 WL 2265513 (E.D. La. August 6, 2007) (Berrigan, J.). This Court accordingly granted Prudential's motion for summary judgment, and the Fifth Circuit recently affirmed the

Court's interpretation and application of LA. REV. STAT. § 9:2772. *Id.*

Where the doctrines of prescription and peremption are normally relevant to deciding whether or not a right or a cause of action exists for a potential plaintiff, the Court finds itself in the position, here, of deciding whether either doctrine would preclude a party to litigation from asserting an affirmative defense. The Court finds no such preclusion, and need not subject LA. REV. STAT. § 9:2772 to extensive interpretation in order to discern whether the legislature intended to bar defenses as well as claims asserted after the five year prescriptive/peremptive period has run. First, no parties dispute that LA. REV. STAT. § 9:2772 is a peremptive statute, and this Court has previously treated it as such. *See Kansas City S. Ry. Co.,* 2007 WL 2265513, at *4. KCS relies heavily on the statute's peremptive force when it argues that Defendants' comparative fault defense must be dismissed because any events giving rise to such fault took place more than five years ago. The fact that LA. REV. STAT. § 9:2772 is peremptive rather than prescriptive, however, has little or no bearing on whether it can preclude defenses to liability. It is well recognized by this Court that peremption is a type of prescription. *Gertrude Gardner, Inc. v. State Farm Mut. Auto Ins. Co.*, No. Civ. A. 02-3182, 2003 W.L. 187363, *3, fn. 4 (E.D. La., April 11, 2003) (Berrigan, J.); *see also Ruth U. Fertel, Inc. v. Executive Risk Specialty Ins. Co.*, No. Civ. A. 01-645, 2001 WL 617545, at *2, fn. 3 (E.D. La., May 31, 2001).

By arguing that Turner and the Parish should be stripped of their respective comparative fault defenses simply because more than five years transpired between KCS's 1997 roadway resurfacing and the 2004 train collision, KCS is attempting to use LA. REV. STAT. § 9:2772 as a means of advancing of recovery, not as a favored defense to liability. In the proverbial language so often used in situations like this one, KCS cannot transform the shield of peremption into a

sword. *See Alldread v. City of Grenada*, 988 F.2d 1425, 1432 (5th Cir. 1993) and *U.S. v. Matthews*, 263 F.3d 814, 816 (5th Cir. 1959) (both holding that a statute of limitations is available only as a shield, not a sword); *Bauswell v. Favret*, 78 So.2d 213, 217 (La. App. 1955) (peremption should be used as a shield, not as a sword).  The Court finds no good reason to allow the general law and policy behind prescriptive statutes-namely, "putting defendants on notice of adverse claims and preventing plaintiffs from sleeping on their rights"-to translate into a bar on the assertion of affirmative defenses.  *Taylor v. United Parcel Serv., Inc.*, 421 F. Supp. 2d 946, 951 (W.D. La. 2006); *see also Jones v. Honeywell Int. Inc.*, 295 F. Supp. 2d 652, 664 (M.D. La. 2003) (holding that the principle of *contra non volentem* is meant to be a shield against the effects of prescription and cannot be turned into a sword simply by dating accrual of an action to *notice of intent* to perform a tortious act).

      The Court cannot conclude that LA. REV. STAT. § 9:2772 is meant to preclude assertion of affirmative defenses when there is a total absence of such intent from the statute's language. If anything, the well-settled Louisiana law that prescriptive and peremptive statutes should be strictly construed against the extinguishment of a right suggests that Turner and the Parish should be afforded a statutory construction favoring an ability to raise an affirmative defense. *King v. Phelps Dunbar, L.L.P.*, 743 So.2d 181, 187-188 (La. 1999).  Therefore, because there is an issue of material fact arising out of work performed on the Riverbend Boulevard crossing in 1997 and there is no legal deficiency in Defendant's assertion of comparative fault, summary judgment on that affirmative defense is inappropriate and is hereby DENIED.

**Conclusion**

For the reasons stated above, it is ORDERED that KCS's motion for summary judgment to dismiss affirmative defenses is GRANTED IN PART and DENIED IN PART.  Rec. Doc. 355.

New Orleans, Louisiana, this 13th day of August, 2008.

                                        HELEN G. BERRIGAN
                                        UNITED STATES DISTRICT JUDGE